# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

REGINALD E. JONES, JR.,

        Petitioner,

v.                              Case No. 4:19-CV-00483-DGK

DARRYL FORTÉ, Jackson County Sheriff;
and DIANA TURNER, Director of the
Jackson County Department of Corrections,

        Respondents.

## PETITIONER'S EXCERPTS OF THE STATE COURT RECORD

The pending Petition for Writ of Habeas Corpus concerns ongoing state-court proceedings in *State of Missouri v. Reginald E. Jones, Jr.*, cause number 1716-CR05241-01. Petitioner believes portions of the state-court record are necessary for a full and fair adjudication of his Petition. As stated in his Emergency Motion for Stay (Doc. 3), Petitioner believes the transcripts from June 12, 2019, and June 13, 2019, are critical; they were not complete when the Petition was filed. Having received the final portion of those transcripts on June 26, 2019, Petitioner hereby provides to this Court relevant excerpts of the state-court record.

Respectfully submitted,

/s/ Michael K. Hill
MICHAEL K. HILL, #68136
Assistant Public Defender
Missouri State Public Defender System
324 East 11th Street
Suite 2000
Kansas City, MO 64106-2417
Phone: (816) 889-2099
Fax: (816) 889-2999
Email: Michael.Hill@mspd.mo.gov

Attorney for Petitioner

**Table of Contents**

**Page**

1.      Circuit Court's Jury Instructions (6/10/2019) ................................................................. **3**

2.      Jury Communication (6/11/2019, 9:18 am) ................................................................. **88**

3.      Jury Communication (6/11/2019, 3:57 pm) ................................................................. **89**

4.      Transcript of Proceedings on June 12, 2019 (6/12/2019) .......................................... **90**

5.      Jury Communication (6/12/2019, 11:00 am) ............................................................ **141**

6.      Jury Communication (no date, no time) .................................................................... **142**

7.      Jury Communication (6/12/2019, 11:10 am) ............................................................ **143**

8.      Jury Communication (6/12/2019, 1:40 pm) ............................................................. **144**

9.      Jury Communication (6/12/2019, no time) ............................................................... **145**

10.     Jury Communication (6/12/2019, 3:59 pm) ............................................................. **146**

11.     Transcript of Proceedings on June 13, 2019 (6/13/2019) ........................................ **147**

12.     Circuit Court's Supplemental Jury Instruction (6/13/2019) .................................... **190**

13.     Jury Communication (6/13/2019, 9:42 am) ............................................................. **193**

14.     Jury Communication (6/13/2019, no time) ............................................................... **194**

15.     Circuit Court's Order Declaring Mistrial (6/13/2019) ............................................. **195**

16.     Circuit Court's Trial Minutes (6/18/2019) .............................................................. **196**

17.     Missouri Court of Appeals' Order Denying Writ of Prohibition (6/14/2019) ......... **201**

18.     Missouri Supreme Court's Order Denying Writ of Prohibition (6/20/2019) .......... **202**

**FILED**
**DIVISION 18**

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY_____

INSTRUCTION NO. A

Today's trial for which you have been called for jury service is a criminal case. The State of Missouri has charged that the defendant, Reginald Jones, Jr., has committed the offenses of Count I: Murder in the First Degree, Count II: Armed Criminal Action, Count III: Murder in the First Degree, and Count IV: Armed Criminal Action. The defendant has pleaded not guilty to the charges. Thus, there are issues of fact that must be decided by a jury, subject to instructions concerning the law, that the Court will give to the jury. The jury is obligated to follow those instructions.

A trial of a criminal case begins with the selection of a jury of qualified and impartial people. In order to obtain such a jury, all of you have been summoned as prospective jurors. From your number, a jury will be selected to hear the case.

It is necessary that you be asked various questions. Your answers will assist the Court in determining whether it should excuse you from serving in this case and will assist the attorneys in making their selection of those who will hear the case. Thus, the questions, that will be asked of you, are not meant to pry into your personal affairs. Rather they are a necessary part of the process of selecting a jury.

Since this is an important part of the trial, you are required to be sworn before questions are asked. Please rise now and be sworn to answer questions.

1716-CR05241-01
State v. Reginald Jones Jr.

[The panel will be sworn.]

Please listen carefully to all questions. Take your time in answering questions. Some of the questions may require you to recall experiences during your entire lifetime. Therefore, search your memory before answering. If you do not understand the question, raise your hand and say so. If, later on, during the examination, you remember something that you failed to answer before, or that would modify an answer you gave before, raise your hand and you will be asked about it. Your answers must not only be truthful but they must be full and complete. If your answer to any of these questions involves matters that are personal or private, you may so indicate and you will be given an opportunity to state your answer at the bench.

The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights finally determined. The failure on your part fully and truthfully to answer questions during this stage of the trial could force the parties to have to retry the lawsuit at some future date.

The Court will now read to you an instruction on the law applicable to all criminal cases.

The charge of any offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty of an offense.

The defendant is presumed to be innocent unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence

1716-CR05241-01
State v. Reginald Jones Jr.

places upon the state the burden of proving beyond a reasonable doubt that the defendant is guilty.

A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

Is there any of you who, if selected as a juror, could not, for any reason, follow that instruction? If so, would you please raise your hand.

It is your duty to follow the law as the Court gives it to you in the instructions even though you may disagree with it. Are there any of you who would not be willing to follow all instructions that the Court will give to the jury? If so, would you please raise your hand.

(Introduce the attorneys and ask such additional questions as the Court deems appropriate.)

The prosecutor will question you first and then counsel for the defendant will question you.

Counsel for the state may proceed.

1716-CR05241-01
State v. Reginald Jones Jr.

```
┌─────────────────────────────────┐
│            FILED                │
│         DIVISION 18             │
│   ┌─────────────────────────┐   │
│   │     10-JUN-2019         │   │
│   └─────────────────────────┘   │
│ CIRCUIT COURT OF JACKSON COUNTY, MO │
│ BY_____      │
└─────────────────────────────────┘
```

INSTRUCTION NO. B

It is the court's duty to instruct you now upon a matter about which you will be reminded at each recess or adjournment of court. Until this case is given to you to decide, you must not discuss any subject connected with the trial among yourselves, or form or express any opinion about it, and, until you are discharged as jurors, you must not talk with others about the case, or permit them to discuss it with you or in your hearing. You should not e-mail, text, blog, instant message or use any other form of communication regarding the case or anyone involved in the case until the trial has ended and you have been discharged as a juror. It is important that your decision be based only on the evidence presented to you in the proceedings in the courtroom. You should not do any research or investigation on your own regarding any matter involved in this case. For example, you should not consult books, dictionaries, the Internet or talk to a person you consider knowledgeable. You should not read, view, or listen to any newspaper, radio, electronic communications from the Internet or television report of the trial.

The bailiff and other officers of the court are not permitted to talk to you about any subject connected with the trial, and you are not permitted to talk to them about it.

1716-CR05241-01
State v. Reginald Jones Jr.

The attorneys representing the state and the defendant are under a duty not to do anything that may even seem improper. Therefore, at recesses and adjournments they will avoid saying anything to the jury except, perhaps, something like "Good morning" or "Good afternoon." In doing that they do not mean to be unfriendly, but are simply doing their best to avoid even an appearance, that might be misunderstood, that they or you are doing anything improper.

The same applies to witnesses and to the defendant. They have been or will be instructed to avoid all contacts with the jury, even to talk about matters wholly unrelated to the case.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED

DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

INSTRUCTION NO. C

The court again reminds you of what you were told at the first recess of the court. Until you retire to consider your verdict, you must not discuss this case among yourselves or with others, or permit anyone to discuss it in your hearing. You should not form or express any opinion about the case until it is finally given to you to decide. Do not do any research or investigation on your own about any matter regarding this case or anyone involved with the trial. Do not communicate with others about the case by any means. Do not read, view, or listen to any newspaper, radio, electronic communication from the Internet or television report of the trial.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

INSTRUCTION NO. D

     Until you retire to consider your verdict as to punishment, you must not discuss this case among yourselves or with others, or permit anyone to discuss it in your hearing. Do not do any research or investigation on your own about any matter regarding this case or anyone involved with the trial. Do not communicate with others about the case by any means. Do not read, view, or listen to any newspaper, radio, electronic communication from the Internet or television report of the trial.

1716-CR05241-01
State v. Reginald Jones Jr.

```
FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY
```

INSTRUCTION NO. E

This case will proceed in the following order:

First, the Court will read to you two instructions concerning the law applicable to this case and its trial. Next, the attorney for the state must make an opening statement outlining what the attorney expects the state's evidence will be. The attorney for the defendant is not required to make an opening statement then or at any other time. However, if the attorney chooses to do so, she may make an opening statement after that of the state, or the attorney may reserve her opening statement until the conclusion of the state's evidence.

Evidence will then be introduced.

At the conclusion of all of the evidence, further instructions in writing concerning the law will be read to you by the Court, after which the attorneys may make their arguments. You will then be given the written instructions of the Court to take with you to your jury room. You will go to that room, select a foreperson, deliberate, and arrive at your verdict.

If you find the defendant guilty in this first stage of the trial, a second stage of the trial will be held. During the second stage, additional instructions will be read to you by the court, additional evidence may be presented, and the attorneys will make their arguments as to punishment. With the additional instructions of the court, you will return to the jury room, deliberate, and determine the punishment to be assessed.

1716-CR05241-01
State v. Reginald Jones Jr.

Sometimes there are delays or conferences out of your hearing with the attorneys about matters of law. There are good reasons for these delays and conferences. The Court is confident that you will be patient and understanding. We will have recesses from time to time.

The following two instructions of law are for your guidance in this case. The two of them, along with other instructions in writing read to you at the close of all the evidence, will be handed to you at that time to take to your jury room.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY _____

INSTRUCTION NO. 1

Those who participate in a jury trial must do so in accordance with established rules. This is true of the parties, the witnesses, the lawyers, and the judge. It is equally true of jurors. It is the court's duty to enforce these rules and to instruct you upon the law applicable to the case. It is your duty to follow the law as the court gives it to you.

However, no statement, ruling, or remark that I may make during the trial is intended to indicate my opinion of what the facts are. It is your duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence. In your determination of the facts, you alone must decide upon the believability of the witnesses and the weight and value of the evidence.

In determining the believability of a witness and the weight to be given to testimony of the witness, you may take into consideration the witness' manner while testifying; the ability and opportunity of the witness to observe and remember any matter about which testimony is given; any interest, bias, or prejudice the witness may have; the reasonableness of the witness' testimony considered in the light of all of the evidence in the case; and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

1716-CR05241-01
State v. Reginald Jones Jr.

It is important for you to understand that this case must be decided only by the evidence presented in the proceedings in this courtroom and the instructions I give you. The reason for this is that the evidence presented in court is reviewed by the lawyers and the court, and the lawyers have the opportunity to comment on, or dispute, evidence presented in court. If you obtain information from other places, the lawyers do not have the opportunity to comment on or dispute it. Fairness and our system of justice require giving both sides the opportunity to view and comment on all evidence in the case. It is unfair to the parties if you obtain information about the case outside this courtroom.

Therefore, you should not visit the scene of any of the incidents described in this case, nor should you conduct your own research or investigation. For example, you should not conduct any independent research of any type by reference to textbooks, dictionaries, magazines, the Internet, a person you consider to be knowledgeable or any other means about any issue in this case, or any witnesses, parties, lawyers, medical or scientific terminology, or evidence that is any way involved in this trial.

You should not communicate, use a cell phone, record, photograph, video, e-mail, blog, tweet, text or post anything about this trial or your thoughts or opinions about any issue in this case to any person. This prohibition on communication about this trial includes use of the Internet, such as "Facebook," "MySpace," "Twitter", or any other personal or public website.

1716-CR05241-01
State v. Reginald Jones Jr.

Faithful performance by you of your duties as jurors is vital to the administration of justice. You should perform your duties without prejudice or fear, and solely from a fair and impartial consideration of the whole case. An individual juror's personal bias, prejudice, or opinion about any characteristics, or perceived characteristics, associated with disability, gender nationality, race or ethnicity, religion, gender identity, or sexual orientation should not be considered.

Do not make up your mind during the trial about what the verdict should be. Keep an open mind until you have heard all the evidence and the case is given to you to decide.

Each of you may take notes in this case but you are not required to do so. I will give you notebooks. Any notes you take must be in those notebooks only. You may not take any notes out of the courtroom before the case is submitted to you for your deliberations. No one will read your notes while you are out of the courtroom. If you choose to take notes, remember that note-taking may interfere with your ability to observe the evidence and witnesses as they are presented.

Do not discuss or share your notes with anyone until you begin your deliberations. During deliberations, if you choose to do so, you may use your notes and discuss them with other jurors. Notes taken during trial are not evidence. You should not assume that your notes, or those of other jurors, are more accurate than your own recollection or the recollection of other jurors.

After you reach your verdict, your notes will be collected and destroyed. No one will be allowed to read them.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

You must not assume as true any fact solely because it is included in or suggested by a question asked a witness. A question is not evidence, and may be considered only as it supplies meaning to the answer.

From time to time the attorneys may make objections. They have a right to do so and are only doing their duty as they see it. You should draw no inference from the fact that an objection has been made.

If the court sustains an objection to a question, you will disregard the entire question and you should not speculate as to what the answer of the witness might have been. The same applies to exhibits offered but excluded from the evidence after an objection has been sustained. You will also disregard any answer or other matter which the court directs you not to consider and anything which the court orders stricken from the record.

The opening statements of attorneys are not evidence. Also, you must not consider as evidence any statement or remark or argument by any of the attorneys addressed to another attorney or to the court. However, the attorneys may enter into stipulations of fact. These stipulations become part of the evidence and are to be considered by you as such.

1716-CR05241-01
State v. Reginald Jones Jr.

INSTRUCTION NO. 3

The law applicable to this case is stated in these instructions and the two which the Court read to you immediately after you were sworn as jurors. All of the instructions will be given to you to take to your jury room for use during your deliberations.

You must not single out certain instructions and disregard others or question the wisdom of any rule of law.

The Court does not mean to assume as true any fact referred to in these instructions but leaves it to you to determine what the facts are.

1716-CR05241-01
State v. Reginald Jones Jr.

```
FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY
```

INSTRUCTION NO. 4

The charge of any offense is not evidence, and it creates no inference that any offense was committed or that the defendant is guilty of an offense.

The defendant is presumed to be innocent, unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt that the defendant is guilty.

A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

1716-CR05241-01
State v. Reginald Jones Jr.

**FILED**
**DIVISION 18**
**10-JUN-2019**
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 7, 2017, in the State of Missouri, the defendant caused the death of Reginald E. Jones (a/k/a Reginald Jones, Sr.), by shooting him, and

Second, that defendant knew or was aware that his conduct was practically certain to cause the death of Reginald E. Jones (a/k/a Reginald Jones, Sr.), and

Third, that defendant did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief, and

Fourth, that defendant did not act in lawful self-defense as submitted in Instruction No. 13, and

Fifth, that defendant did not act in lawful defense of another person as submitted in Instruction No. 14,

then you will find the defendant guilty under Count I of Murder in the First Degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of Murder in the First Degree.

1716-CR05241-01
State v. Reginald Jones Jr.

If you do find the defendant guilty under Count I of Murder in the First Degree, you are to assess and declare the punishment at imprisonment for life without eligibility for probation or parole.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 6

As to Count I, if you find and believe that defendant did act in self-defense, you must find the defendant not guilty under Count I Murder in the First Degree as submitted in Instruction No. 5.

1716-CR05241-01
State v. Reginald Jones Jr.

As to Count I, if you do not find the defendant guilty of Murder in the First Degree, you must consider whether he is guilty of Murder in the Second Degree under this instruction.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 7, 2017, in the State of Missouri, the defendant caused the death of Reginald E. Jones (a/k/a Reginald Jones, Sr.), by shooting him, and

Second, that it was the defendant's purpose to cause serious physical injury to or to cause the death of Reginald E. Jones (a/k/a Reginald Jones, Sr.), and

Third, that defendant did not do so under the influence of sudden passion arising from adequate cause, and

Fourth, that defendant did not act in lawful self-defense as submitted in Instruction No. 13, and

Fifth, that defendant did not act in lawful defense of another person as submitted in Instruction No. 14,

1716-CR05241-01
State v. Reginald Jones Jr.

then you will find the defendant guilty under Count I of Murder in the Second Degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of Murder in the Second Degree under this instruction.

As used in this instruction, the term "sudden passion" means passion directly caused by and arising out of provocation by Reginald E. Jones (a/k/a Reginald Jones, Sr.), or another acting with Reginald E. Jones (a/k/a Reginald Jones, Sr.), which passion arose at the time of the offense and was not solely the result of former provocation.

The term "adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 8

As to Count I, if you find and believe that defendant did act in self-defense, you must find the defendant not guilty under Count I Murder in the Second Degree as submitted in Instruction No. 7.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 9

As to Count I, if you do not find the defendant guilty of Murder in the Second Degree, you must consider whether the defendant is guilty of Voluntary Manslaughter.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 7, 2017, in the State of Missouri, the defendant caused the death of Reginald E. Jones (a/k/a Reginald Jones, Sr.) by shooting him, and

Second, that it was the defendant's purpose to cause serious physical injury to or to cause the death of Reginald E. Jones (a/k/a Reginald Jones, Sr.), and

Third, that defendant did not act in lawful self-defense as submitted in Instruction No. 13, and

Fourth, that defendant did not act in lawful defense of another person as submitted in Instruction No. 14,

then you will find the defendant guilty under Count I of Voluntary Manslaughter.

1716-CR05241-01
State v. Reginald Jones Jr.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of Voluntary Manslaughter.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 10

As to Count I, if you find and believe that defendant did act in self-defense, you must find the defendant not guilty under Count I Voluntary Manslaughter as submitted in Instruction No. 9.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 11

As to Count I, if you do not find the defendant guilty of Voluntary Manslaughter, you must consider whether he is guilty of Involuntary Manslaughter in the First Degree under this instruction.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 7, 2017, in the State of Missouri, the defendant caused the death of Reginald Jones, Sr., by shooting him, and

Second, that defendant recklessly caused the death of Reginald Jones, Sr., and

Third, that defendant did not act in lawful self- defense as submitted in Instruction No. 13, and

Fourth, that defendant did not act in lawful defense of another as submitted in Instruction No. 14, and

then you will find the defendant guilty under Count I of Involuntary Manslaughter in the First Degree under this instruction.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

1716-CR05241-01
State v. Reginald Jones Jr.

In determining whether the defendant recklessly caused the death of Reginald Jones, Sr. you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 12

As to Count I, if you find and believe that defendant did act in self-defense, you must find the defendant not guilty under Count I Involuntary Manslaughter as submitted in Instruction No. 11.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 13

One of the issues as to Count I is whether the use of physical force by the defendant against Reginald E. Jones (a/k/a Reginald Jones, Sr.), was lawful. On the issue of self-defense as to Count I, you are instructed as follows:

In this state the use of physical force, including the use of deadly force, to defend oneself is lawful in certain situations.

However, an initial aggressor is not justified in using physical force to defend himself from the counter attack that he provoked.

A person who is the initial aggressor in an encounter can regain the privilege of using physical force in lawful self-defense if he withdraws from the original encounter and clearly indicates to the other person his desire to end the encounter. Then, if the other person persists in continuing the conflict by threatening to use or by using unlawful force, the first person is no longer the initial aggressor, and he can then lawfully use physical force to defend himself.

In order for a person lawfully to use non-deadly physical force in self-defense, he must reasonably believe such physical force is necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful force and he can only use physical force to the extent that he reasonably believes is necessary to defend himself.

1716-CR05241-01
State v. Reginald Jones Jr.

But a person is not permitted to use deadly force unless he reasonably believes that the use of deadly force is necessary to protect himself against death or serious physical injury or the commission of a forcible felony.

A person is not required to retreat before resorting to the use of physical force to defend himself if he is in a location the person has the right to be.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in lawful self-defense, you must find the defendant not guilty under Count I.

As used in this instruction, an "initial aggressor" is one who first attacks or threatens to attack another.

As used in this instruction, the term "reasonably believe" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

As used in this instruction, "deadly force" means physical force which is used with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury.

1716-CR05241-01
State v. Reginald Jones Jr.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

As used in this instruction, the term "forcible felony" means robbery.

As used in this instruction, "robbery" means the forcible theft of property.

Evidence has been introduced of the reputation of Reginald E. Jones (a/k/a Reginald Jones, Sr.) for being violent and turbulent. You may consider this evidence in determining who was the initial aggressor in the encounter.

Evidence has been introduced that Reginald E. Jones (a/k/a Reginald Jones, Sr.), had a reputation for being violent and turbulent, and that the defendant was aware of that reputation. You may consider this evidence in determining whether the defendant reasonably believed that the use of physical force was necessary to defend himself from what he reasonably believed to be the use or imminent use of unlawful force by Reginald E. Jones (a/k/a Reginald Jones, Sr.).

Evidence has been introduced of the prior relationship between defendant and Reginald E. Jones (a/k/a Reginald Jones, Sr.), including evidence of arguments and acts of violence. You may consider this evidence in determining who the initial aggressor in the encounter was, and you may also consider it in determining whether the defendant reasonably believed that the use of physical force was necessary to defend himself from what he reasonably believed to be the use or imminent use of unlawful force by Reginald E. Jones (a/k/a Reginald Jones, Sr.).

1716-CR05241-01
State v. Reginald Jones Jr.

Evidence has been introduced of acts of violence not involving the defendant committed by Reginald E. Jones (a/k/a Reginald Jones, Sr.), and that the defendant was aware of these acts. You may consider this evidence in determining whether the defendant reasonably believed that the use of physical force was necessary to defend himself from what he reasonably believed to be the use or imminent use of unlawful force. You may not consider this evidence in determining who was the initial aggressor in the encounter or for any other reason.

Evidence has been introduced of threats made by Reginald E. Jones (a/k/a Reginald Jones, Sr.), against defendant and evidence of threats made by defendant against Reginald E. Jones (a/k/a Reginald Jones, Sr.). You may consider this evidence in determining who was the initial aggressor in the encounter.

If any threats against defendant were made by Reginald E. Jones (a/k/a Reginald Jones, Sr.), and were known by or had been communicated to the defendant, you may consider this evidence in determining whether the defendant reasonably believed that the use of physical force was necessary to defend himself from what he reasonably believed to be the use or imminent use of unlawful force by Reginald E. Jones (a/k/a Reginald Jones, Sr.).

You, however, should consider all of the evidence in the case in determining whether the defendant acted in lawful self-defense.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 14

One of the issues as to Count I is whether the use of physical force by the defendant against Reginald E. Jones (a/k/a Reginald Jones, Sr.), was lawful. On the issue of defense of another person, you are instructed as follows:

In this state the use of physical force, including the use of deadly force, to defend another person is lawful in certain situations.

However, an initial aggressor is not justified in using physical force to defend others from the counter attack that he provoked.

A person who is the initial aggressor in an encounter can regain the privilege of using force in defense of others if he withdraws from the original encounter and clearly indicates to the other person his desire to end the encounter. Then, if the other person persists in continuing the incident by threatening to use or by using force, the first person is no longer the initial aggressor, and he can then lawfully use force to protect others.

In order for a person to lawfully use non-deadly physical force in defense of another person, he must reasonably believe that physical force is necessary to defend the person he is trying to defend from what he reasonably believes to be the use or imminent use of unlawful force and he can only use physical force to the extent that he reasonably believes is necessary to defend the other person.

1716-CR05241-01
State v. Reginald Jones Jr.

But a person is not permitted to use deadly force unless he reasonably believes the use of deadly force is necessary to protect the other person against death or serious physical injury or the commission of a forcible felony.

A person is not required to retreat before resorting to the use of physical force to defend another person if he is in a location the person has the right to be.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful defense of Sean Hill, Donald Riley, or a person identified as "Quann." Unless you find beyond a reasonable doubt that the defendant did not act in lawful defense of Sean Hill, Donald Riley, or a person identified as "Quann," you must find the defendant not guilty under Count I.

As used in this instruction, an "initial aggressor" is one who first attacks or threatens to attack another.

As used in this instruction, the term "reasonably believe" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

As used in this instruction, "deadly force" means physical force which is used with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury.

1716-CR05241-01
State v. Reginald Jones Jr.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

As used in this instruction, the term "forcible felony" means robbery.

As used in this instruction, "robbery" means the forcible theft of property.

Evidence has been introduced of the reputation of Reginald E. Jones (a/k/a Reginald Jones, Sr.) for being violent and turbulent. You may consider this evidence in determining who was the initial aggressor in the encounter.

Evidence has been introduced that Reginald E. Jones (a/k/a Reginald Jones, Sr.), had a reputation for being violent and turbulent, and that the defendant was aware of that reputation. You may consider this evidence in determining whether the defendant reasonably believed that the use of physical force was necessary to defend Sean Hill, Donald Riley, or a person identified as "Quann" from what he reasonably believed to be the use or imminent use of unlawful force by Reginald E. Jones (a/k/a Reginald Jones, Sr.).

Evidence has been introduced of the prior relationship between defendant and Reginald E. Jones (a/k/a Reginald Jones, Sr.), including evidence of arguments and acts of violence. You may consider this evidence in determining who the initial aggressor in the encounter was, and you may also consider it in determining whether the defendant reasonably believed that the use of physical force was necessary to defend Sean Hill, Donald Riley, or a person identified as "Quann" from what he

1716-CR05241-01
State v. Reginald Jones Jr.

reasonably believed to be the imminent use of unlawful force by Reginald E. Jones (a/k/a Reginald Jones, Sr.).

Evidence has been introduced of acts of violence not involving the defendant committed by Reginald E. Jones (a/k/a Reginald Jones, Sr.), and that the defendant was aware of these acts. You may consider this evidence in determining whether the defendant reasonably believed that the use of physical force was necessary to defend Sean Hill, Donald Riley, or a person identified as "Quann" from what he reasonably believed to be the use or imminent use of unlawful force. You may not consider this evidence in determining who was the initial aggressor in the encounter or for any other reason.

Evidence has been introduced of threats made by Reginald E. Jones (a/k/a Reginald Jones, Sr.), against defendant and evidence of threats made by defendant against Reginald E. Jones (a/k/a Reginald Jones, Sr.). You may consider this evidence in determining who was the initial aggressor in the encounter.

If any threats against defendant, Sean Hill, Donald Riley, or a person identified as "Quann" were made by Reginald E. Jones (a/k/a Reginald Jones, Sr.), and were known by or had been communicated to the defendant, you may consider this evidence in determining whether the defendant reasonably believed that the use of physical force was necessary to defend Sean Hill, Donald Riley, or a person identified as "Quann" from what he reasonably believed to be the use or imminent use of unlawful force by Reginald E. Jones (a/k/a Reginald Jones, Sr.).

1716-CR05241-01
State v. Reginald Jones Jr.

You, however, should consider all of the evidence in the case in determining whether the defendant acted in lawful defense of Sean Hill, Donald Riley, or a person identified as "Quann."



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY _____

INSTRUCTION NO. 15

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of Murder in the First Degree, as submitted in Instruction No. 5, and

Second, that defendant committed that offense by or with or through, the knowing use or assistance or aid of a deadly weapon,

then you will find the defendant guilty under Count II of Armed Criminal Action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY _____

INSTRUCTION NO. 16

As to Count II, if you do not find the defendant guilty of Armed Criminal Action in connection with the offense of Murder in the First Degree, you must consider whether the defendant is guilty of Armed Criminal Action in connection with the offense of Murder in the Second Degree.

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of Murder in the Second Degree, as submitted in Instruction No. 7, and

Second, that defendant committed that offense by or with or through, the knowing use or assistance or aid of a deadly weapon,

then you will find the defendant guilty under Count II of Armed Criminal Action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 17

As to Count II, if you do not find the defendant guilty of Armed Criminal Action in connection with the offense of Murder in the Second Degree, you must consider whether the defendant is guilty of Armed Criminal Action in connection with the offense of Voluntary Manslaughter.

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of Voluntary Manslaughter, as submitted in Instruction No. 9, and

Second, that defendant committed that offense by or with or through, the knowing use or assistance or aid of a deadly weapon,

then you will find the defendant guilty under Count II of Armed Criminal Action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY_____

As to Count II, if you do not find the defendant guilty of Armed Criminal Action in connection with the offense of Voluntary Manslaughter, you must consider whether the defendant is guilty of Armed Criminal Action in connection with the offense of Involuntary Manslaughter in the First Degree.

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of Involuntary Manslaughter in the First Degree, as submitted in Instruction No. 11, and

Second, that defendant committed that offense by or with or through, the knowing use or assistance or aid of a deadly weapon,

then you will find the defendant guilty under Count II of Armed Criminal Action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 7, 2017, in the State of Missouri, the defendant caused the death of Darryl Singleton by shooting him, and

Second, that defendant knew or was aware that his conduct was practically certain to cause the death of Darryl Singleton, and

Third, that defendant did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief, and

Fourth, that defendant did not act in lawful self-defense as submitted in Instruction No. 27, and

Fifth, that defendant did not act in lawful defense of another person as submitted in Instruction No. 28,

then you will find the defendant guilty under Count III of Murder in the First Degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of Murder in the First Degree.

1716-CR05241-01
State v. Reginald Jones Jr.

If you do find the defendant guilty under Count III of Murder in the First Degree, you are to assess and declare the punishment at imprisonment for life without eligibility for probation or parole.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED

DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

INSTRUCTION NO. 20

As to Count III, if you find and believe that defendant did act in self-defense, you must find the defendant not guilty under Count III Murder in the First Degree as submitted in Instruction No. 19.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

As to Count III, if you do not find the defendant guilty of Murder in the First Degree, you must consider whether he is guilty of Murder in the Second Degree under this instruction.

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 7, 2017, in the State of Missouri, the defendant caused the death of Darryl Singleton by shooting him, and

Second, that it was the defendant's purpose to cause serious physical injury to or to cause the death of Darryl Singleton, and

Third, that defendant did not do so under the influence of sudden passion arising from adequate cause, and

Fourth, that defendant did not act in lawful self-defense as submitted in Instruction No. 27, and

Fifth, that defendant did not act in lawful defense of another person as submitted in Instruction No. 28,

then you will find the defendant guilty under Count III of Murder in the Second Degree.

1716-CR05241-01
State v. Reginald Jones Jr.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of Murder in the Second Degree under this instruction.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 22

As to Count III, if you find and believe that defendant did act in self-defense, you must find the defendant not guilty under Count III Murder in the Second Degree as submitted in Instruction No. 21.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 23

As to Count III, if you do not find the defendant guilty of Murder in the Second Degree, you must consider whether the defendant is guilty of Voluntary Manslaughter.

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 7, 2017, in the State of Missouri, the defendant caused the death of Darryl Singleton by shooting him, and

Second, that it was the defendant's purpose to cause serious physical injury to or to cause the death of Darryl Singleton, and

Third, that defendant did not act in lawful self-defense as submitted in Instruction No. 27, and

Fourth, that defendant did not act in lawful defense of another person as submitted in Instruction No. 28,

then you will find the defendant guilty under Count III of Voluntary Manslaughter.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of Voluntary Manslaughter.

1716-CR05241-01
State v. Reginald Jones Jr.


FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 24

As to Count III, if you find and believe that defendant did act in self-defense, you must find the defendant not guilty under Count III Voluntary Manslaughter as submitted in Instruction No. 23.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 25

As to Count III, if you do not find the defendant guilty of Voluntary Manslaughter, you must consider whether he is guilty of Involuntary Manslaughter in the First Degree under this instruction.

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 7, 2017, in the State of Missouri, the defendant caused the death of Darryl Singleton, by shooting him, and

Second, that defendant recklessly caused the death of Darryl Singleton, and

Third, that defendant did not act in lawful self-defense as submitted in Instruction No. 27, and

Fourth, that defendant did not act in lawful defense of another as submitted in Instruction No. 28,

then you will find the defendant guilty under Count III of Involuntary Manslaughter in the First Degree under this instruction.

1716-CR05241-01
State v. Reginald Jones Jr.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

In determining whether the defendant recklessly caused the death of Darryl Singleton you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 26

As to Count III, if you find and believe that defendant did act in self-defense, you must find the defendant not guilty under Count III Involuntary Manslaughter in the First Degree as submitted in Instruction No. 25.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 27

One of the issues as to Count III is whether the use of physical force by the defendant against Darryl Singleton was lawful. On the issue of self-defense, you are instructed as follows:

In this state the use of physical force, including the use of deadly force, to defend oneself is lawful in certain situations.

However, an initial aggressor is not justified in using physical force to defend himself from the counter attack that he provoked.

A person who is the initial aggressor in an encounter can regain the privilege of using physical force in lawful self-defense if he withdraws from the original encounter and clearly indicates to the other person his desire to end the encounter. Then, if the other person persists in continuing the conflict by threatening to use or by using unlawful force, the first person is no longer the initial aggressor, and he can then lawfully use physical force to defend himself.

In order for a person lawfully to use non-deadly physical force in self-defense, he must reasonably believe such physical force is necessary to defend himself from

1716-CR05241-01
State v. Reginald Jones Jr.

what he reasonably believes to be the use or imminent use of unlawful force and he can only use physical force to the extent that he reasonably believes is necessary to defend himself.

But a person is not permitted to use deadly force unless he reasonably believes that the use of deadly force is necessary to protect himself against death or serious physical injury or the commission of a forcible felony .

A person is not required to retreat before resorting to the use of physical force to defend himself if he is in a location the person has the right to be.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the defendant did not act in lawful self-defense, you must find the defendant not guilty under Count III.

As used in this instruction, an "initial aggressor" is one who first attacks or threatens to attack another.

As used in this instruction, the term "reasonably believe" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

1716-CR05241-01
State v. Reginald Jones Jr.

As used in this instruction, "deadly force" means physical force which is used with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

As used in this instruction, the term "forcible felony" means robbery.

As used in this instruction, "robbery" means the forcible theft of property.

If any threats against defendant were made by Darryl Singleton and were known by or had been communicated to the defendant, you may consider this evidence in determining whether the defendant reasonably believed that the use of physical force was necessary to defend himself from what he reasonably believed to be the use or imminent use of unlawful force by Darryl Singleton.

You, however, should consider all of the evidence in the case in determining whether the defendant acted in lawful self-defense.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 28

One of the issues as to Count III is whether the use of physical force by the defendant against Darryl Singleton was lawful. On the issue of defense of another person, you are instructed as follows:

In this state the use of physical force, including the use of deadly force, to defend another person is lawful in certain situations.

However, an initial aggressor is not justified in using physical force to defend others from the counter attack that he provoked.

A person who is the initial aggressor in an encounter can regain the privilege of using force in defense of others if he withdraws from the original encounter and clearly indicates to the other person his desire to end the encounter. Then, if the other person persists in continuing the incident by threatening to use or by using force, the first person is no longer the initial aggressor, and he can then lawfully use force to protect others.

1716-CR05241-01
State v. Reginald Jones Jr.

In order for a person to lawfully use non-deadly physical force in defense of another person, he must reasonably believe that physical force is necessary to defend the person he is trying to defend from what he reasonably believes to be the use or imminent use of unlawful force and he can only use physical force to the extent that he reasonably believes is necessary to defend the other person.

But a person is not permitted to use deadly force unless he reasonably believes the use of deadly force is necessary to protect the other person against death or serious physical injury or the commission of a forcible felony.

A person is not required to retreat before resorting to the use of physical force to defend another person if he is in a location the person has the right to be.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful defense of Sean Hill, Donald Riley, or a person identified as "Quann." Unless you find beyond a reasonable doubt that the defendant did not act in lawful defense of Sean Hill, Donald Riley, or a person identified as "Quann," you must find the defendant not guilty under Count III.

As used in this instruction, an "initial aggressor" is one who first attacks or threatens to attack another.

As used in this instruction, the term "reasonably believe" means a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

1716-CR05241-01
State v. Reginald Jones Jr.

As used in this instruction, "deadly force" means physical force which is used with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

As used in this instruction, the term "forcible felony" means robbery.

As used in this instruction, "robbery" means the forcible theft of property.

If any threats against defendant, Sean Hill, Donald Riley, or a person identified as "Quann" were made by Darryl Singleton and were known by or had been communicated to the defendant, you may consider this evidence in determining whether the defendant reasonably believed that the use of physical force was necessary to defend Sean Hill, Donald Riley, or a person identified as "Quann" from what he reasonably believed to be the use or imminent use of unlawful force by Darryl Singleton.

You, however, should consider all of the evidence in the case in determining whether the defendant acted in lawful defense of Sean Hill, Donald Riley, or a person identified as "Quann."

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 29

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of Murder in the First Degree, as submitted in Instruction No. 19, and

Second, that defendant committed that offense by or with or through, the knowing use or assistance or aid of a deadly weapon,

then you will find the defendant guilty under Count IV of Armed Criminal Action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 30

As to Count IV, if you do not find the defendant guilty of Armed Criminal Action in connection with the offense of Murder in the First Degree, you must consider whether the defendant is guilty of Armed Criminal Action in connection with the offense of Murder in the Second Degree.

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of Murder in the Second Degree, as submitted in Instruction No. 21, and

Second, that defendant committed that offense by or with or through, the knowing use or assistance or aid of a deadly weapon,

then you will find the defendant guilty under Count IV of Armed Criminal Action.

1716-CR05241-01
State v. Reginald Jones Jr.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED

DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY_____

INSTRUCTION NO. 31

As to Count IV, if you do not find the defendant guilty of Armed Criminal Action in connection with the offense of Murder in the Second Degree, you must consider whether the defendant is guilty of Armed Criminal Action in connection with the offense of Voluntary Manslaughter.

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of Voluntary Manslaughter, as submitted in Instruction No. 23, and

Second, that defendant committed that offense by or with or through, the knowing use or assistance or aid of a deadly weapon,

then you will find the defendant guilty under Count IV of Armed Criminal Action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

As to Count IV, if you do not find the defendant guilty of Armed Criminal Action in connection with the offense of Voluntary Manslaughter, you must consider whether the defendant is guilty of Armed Criminal Action in connection with the offense of Involuntary Manslaughter in the First Degree.

As to Count IV, if you find and believe from the evidence beyond a reasonable doubt:

First, that defendant committed the offense of Involuntary Manslaughter in the First Degree, as submitted in Instruction No. 25, and

Second, that defendant committed that offense by or with or through, the knowing use or assistance or aid of a deadly weapon,

then you will find the defendant guilty under Count IV of Armed Criminal Action.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 33

The defendant is charged with a separate offense in each of the four counts submitted to you. Each count must be considered separately.

You should return a separate verdict for each count and you can return only one verdict for each count.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED

DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

INSTRUCTION NO. 34

When you retire to your jury room, you will first select one of your number to act as your foreperson and to preside over your deliberations.

You will then discuss the case with your fellow jurors. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Your verdict, whether guilty or not guilty, must be agreed to by each juror. Although the verdict must be unanimous, the verdict should be signed by your foreperson alone.

When you have concluded your deliberations, you will complete the applicable forms to which you unanimously agree and return them with all unused forms and the written instructions of the Court.

1716-CR05241-01
State v. Reginald Jones Jr.

FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

INSTRUCTION NO. 35

The attorneys will now have the opportunity of arguing the case to you. Their arguments are intended to help you in understanding the evidence and applying the law, but they are not evidence.

You will bear in mind that it is your duty to be governed in your deliberations by the evidence as you remember it, the reasonable inferences which you believe should be drawn therefrom, and the law as given in these instructions.

It is your duty, and yours alone, to render such verdict under the law and the evidence as in your reason and conscience is true and just.

The state's attorney must open the argument. The defendant's attorney may then argue the case. The state's attorney may then reply. No further argument is permitted by either side.

1716-CR05241-01
State v. Reginald Jones Jr.



**FILED**
**DIVISION 18**

**10-JUN-2019**

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

VERDICT FORM

As to Count I, we, the jury, find the defendant Reginald Jones, Jr. guilty of Murder in the First Degree as submitted in Instruction No. 5.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

VERDICT FORM

As to Count I, we, the jury, find the defendant Reginald Jones, Jr. guilty of Murder in the Second Degree as submitted in Instruction No. 7.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.



**FILED**

**DIVISION 18**

**10-JUN-2019**

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

VERDICT FORM

As to Count I, we, the jury, find the defendant Reginald Jones, Jr. guilty of Voluntary Manslaughter as submitted in Instruction No. 9.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.



FILED

DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

VERDICT FORM

As to Count I, we, the jury, find the defendant Reginald Jones, Jr. guilty of Involuntary Manslaughter in the First Degree as submitted in Instruction No. 11.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.



FILED

DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

VERDICT FORM

As to Count I, we, the jury, find the defendant Reginald Jones, Jr. not guilty.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

VERDICT FORM

As to Count II, we, the jury, find the defendant Reginald Jones, Jr. guilty of Armed Criminal Action as submitted in Instruction No. 15.

_____

Foreperson

Note: Unless you have found the defendant guilty of Murder in the First Degree as submitted in Instruction No. 5, you may not find the defendant guilty of Armed Criminal Action as submitted in Instruction No. 15.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

VERDICT FORM

As to Count II, we, the jury, find the defendant Reginald Jones, Jr. guilty of Armed Criminal Action as submitted in Instruction No. 16.

_____

Foreperson

Note: Unless you have found the defendant guilty of Murder in the Second Degree as submitted in Instruction No. 7, you may not find the defendant guilty of Armed Criminal Action as submitted in Instruction No. 16.

1716-CR05241-01
State v. Reginald Jones Jr.



**FILED**
**DIVISION 18**

**10-JUN-2019**

CIRCUIT COURT OF JACKSON COUNTY, MO

BY _____

VERDICT FORM

As to Count II, we, the jury, find the defendant Reginald Jones, Jr. guilty of Armed Criminal Action as submitted in Instruction No. 17.

_____
Foreperson

Note: Unless you have found the defendant guilty of Voluntary Manslaughter as submitted in Instruction No. 9, you may not find the defendant guilty of Armed Criminal Action as submitted in Instruction No. 17.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

VERDICT FORM

As to Count II, we, the jury, find the defendant Reginald Jones, Jr. guilty of Armed Criminal Action as submitted in Instruction No. 18.

_____

Foreperson

Note: Unless you have found the defendant guilty of Involuntary Manslaughter in the First Degree as submitted in Instruction No. 11, you may not find the defendant guilty of Armed Criminal Action as submitted in Instruction No. 18.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

VERDICT FORM

As to Count II, we, the jury, find the defendant Reginald Jones, Jr. not guilty of Armed Criminal Action.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.



FILED

DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

VERDICT FORM

As to Count III, we, the jury, find the defendant Reginald Jones, Jr. guilty Murder in the First Degree as submitted in Instruction No. 19.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.


FILED

DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

VERDICT FORM

As to Count III, we, the jury, find the defendant Reginald Jones, Jr. guilty of Murder in the Second Degree as submitted in Instruction No. 21.

_____
Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.



FILED

DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

VERDICT FORM

As to Count III, we, the jury, find the defendant Reginald Jones, Jr. guilty of Voluntary Manslaughter as submitted in Instruction No. 23.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

VERDICT FORM

As to Count III, we, the jury, find the defendant Reginald Jones, Jr. guilty of Involuntary Manslaughter in the First Degree as submitted in Instruction No. 25.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

VERDICT FORM

As to Count III, we, the jury, find the defendant Reginald Jones, Jr. not guilty.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.



FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

VERDICT FORM

As to Count IV, we, the jury, find the defendant Reginald Jones, Jr. guilty of Armed Criminal Action as submitted in Instruction No. 29.

_____

Foreperson

Note: Unless you have found the defendant guilty of Murder in the First Degree as submitted in Instruction No. 19, you may not find the defendant guilty of Armed Criminal Action as submitted in Instruction No. 29.

1716-CR05241-01
State v. Reginald Jones Jr.



**FILED**

**DIVISION 18**

**10-JUN-2019**

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

**VERDICT FORM**

As to Count IV, we, the jury, find the defendant Reginald Jones, Jr. guilty of Armed Criminal Action as submitted in Instruction No. 30.

_____

Foreperson

Note: Unless you have found the defendant guilty of Murder in the Second Degree as submitted in Instruction No. 21, you may not find the defendant guilty of Armed Criminal Action as submitted in Instruction No. 30.

1716-CR05241-01
State v. Reginald Jones Jr.


FILED
DIVISION 18
10-JUN-2019
CIRCUIT COURT OF JACKSON COUNTY, MO
BY

VERDICT FORM

As to Count IV, we, the jury, find the defendant Reginald Jones, Jr. guilty of Armed Criminal Action as submitted in Instruction No. 31.

_____

Foreperson

Note: Unless you have found the defendant guilty of Voluntary Manslaughter as submitted in Instruction No. 23, you may not find the defendant guilty of Armed Criminal Action as submitted in Instruction No. 31.

1716-CR05241-01
State v. Reginald Jones Jr.



**FILED**

**DIVISION 18**

**10-JUN-2019**

CIRCUIT COURT OF JACKSON COUNTY, MO

BY _____

VERDICT FORM

As to Count IV, we, the jury, find the defendant Reginald Jones, Jr. guilty of Armed Criminal Action as submitted in Instruction No. 32.

_____
                                                             Foreperson

Note: Unless you have found the defendant guilty of Involuntary Manslaughter in the First Degree as submitted in Instruction No. 25, you may not find the defendant guilty of Armed Criminal Action as submitted in Instruction No. 32.

1716-CR05241-01
State v. Reginald Jones Jr.



FILED

DIVISION 18

10-JUN-2019

CIRCUIT COURT OF JACKSON COUNTY, MO

BY

VERDICT FORM

As to Count IV, we, the jury, find the defendant Reginald Jones, Jr. not guilty of Armed Criminal Action.

_____

Foreperson

1716-CR05241-01
State v. Reginald Jones Jr.

# JURY QUESTION FORM

CASE NAME: *State of Missouri v. Reginald Jones Jr.*

CASE NO. 1716-CR05241-01      DATE: 6/11    TIME: 9:18

QUESTION: – The jury would like to request State's & Defense exhibit 1 - all videos.

– State evidence and Defense evidence

– Request what the Stand your Ground Law is and can it Be considered.

BY: _____

**FOREPERSON**

COURT'S RESPONSE:

Court has provided State's Exhibit # 1. EXCEPT
Court has provided all admitted exhibits ( shell casings
and bullets)

The Jury shall be guided by the Court's instructions.

9:52 AM
**TIME**

Kevin D. Harrell, JUDGE

**Court's Exhibit #**

# JURY QUESTION FORM

CASE NAME: *State of Missouri v. Reginald Jones Jr.*

CASE NO. 1716-CR05241-01          DATE: 6/11     TIME: 3:57

QUESTION: When considering self-defense in Count III does the initial aggressor, encounter, and lawful use of physical force need to be considered completely separate from that of Count I?

BY: _____

**FOREPERSON**

COURT'S RESPONSE:

THE JURY SHALL BE GUIDED BY THE COURTS' INSTRUCTION.

4:20 PM
**TIME**

Kevin D. Harrell, JUDGE

**Court's Exhibit #**

```
 1      IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
                16TH JUDICIAL CIRCUIT, DIVISION 18
 2              Honorable Kevin D. Harrell, Judge

 3    STATE OF MISSOURI,        )
                                )
 4                Plaintiff,    )
                                )
 5    vs.                       )    No. 1716-CR05241-01
                                )
 6    REGINALD JONES, JR.,      )
                                )
 7                Defendant.    )
      _____

 8
                      EXCERPT - TRANSCRIPT
 9    _____

10          On 6/12/19, the above cause came on for
      hearing before the HONORABLE KEVIN D. HARRELL,
11    Judge of Division No. 18 of the 16th Judicial
      Circuit Court of Missouri.

12                        APPEARANCES

13

14    For the Plaintiff:

15    Ms. Sara Castle
      Mr. Dion Sankar
16    Ms. Lauren Dollar
      Assistant Prosecuting Attorneys
17    Prosecutors Office
      415 E. 12th Street
18    Kansas City, MO 64105

19    For the Defendant:

20    Ms. Paige Bremner
      Ms. Crystal Ellison
21    Assistant Public Defenders
      Public Defenders Office
22    324 E. 11th Street
      Kansas City, MO 64106

23

24

25          Jessica Sanford, RPR, CCR #1379
         16th Judicial Circuit, Kansas City, Missouri
                            1
```

```
 1              THE COURT:  All right.  In the matter        11:14:03
 2    of State of Missouri vs. Reginald Jones, Jr.,          11:14:04
 3    these conversations are taking place outside           11:14:08
 4    of our empanelled jury.  We haven't had any            11:14:10
 5    discussions as of yet.                                 11:14:25
 6              MS. CASTLE:  I apologize, Judge.  We          11:14:28
 7    were having elevator --                                11:14:28
 8              THE COURT:  No.  No.  You're fine.  I         11:14:29
 9    didn't know everybody was coming or else I             11:14:29
10    would have waited.                                     11:14:32
11              All right.  So we have three                 11:14:34
12    questions.  And again, I think I started               11:14:35
13    saying that these conversations are taking             11:14:39
14    place outside our empanelled jury.                     11:14:41
15              First question: If the jury doesn't          11:14:44
16    unanimously, all 12, find the defendant guilty         11:14:48
17    or not guilty, do we move on to the next               11:14:54
18    instruction question?  If we do not all 12             11:14:57
19    agree on first degree, do we move on to the            11:15:00
20    next instruction or do we all have to agree on         11:15:04
21    one instruction moving to the next                     11:15:08
22    instruction?                                           11:15:11
23              It is signed by the foreperson.              11:15:12
24    That's the first question.                             11:15:14
25              MS. BREMNER:  Can I read it, Judge?          11:15:17
```

```
 1              THE COURT:  You may.                    11:15:19

 2              MS. BREMNER:  The law is actually       11:15:42

 3    clear on this instruction, this question.        11:15:44

 4    I've never had this come up in a jury            11:15:46

 5    situation, so I'm not entirely sure what the     11:15:49

 6    answer should be, but the instruction is -- so   11:15:57

 7    I don't know if we just want to direct them to   11:16:00

 8    the instruction again, but the instruction       11:16:02

 9    is -- they don't have to all agree.  They        11:16:06

10    could be hung on -- that's why they're           11:16:08

11    instructed to move on to -- if you look at the   11:16:11

12    instruction when it says from moving from        11:16:13

13    murder 1 to murder 2, you know, the next         11:16:18

14    language that comes on top of it.  So I don't    11:16:21

15    know if we just say be guided by the             11:16:23

16    instructions or if we actually answer that       11:16:24

17    question with what it says.                      11:16:27

18              THE COURT:  State.                      11:16:29

19              MR. SANKAR:  Do you mind just giving    11:16:34

20    us one moment?                                   11:16:37

21              (Discussion held off the record.)       11:16:43

22              MS. CASTLE:  Your Honor, I think that   11:17:10

23    our response would be you will just be guided    11:17:11

24    by the instructions.                             11:17:13

25              THE COURT:  Ms. Bremner.               11:17:15
```

3

```
 1              MS. BREMNER:  I'm sorry?              11:17:16

 2              THE COURT:  I was just asking your    11:17:17

 3    opinion based off what the state just said.    11:17:20

 4              MS. BREMNER:  Right.  I mean, the law 11:17:23

 5    in Missouri is you do not have to all agree to 11:17:27

 6    move on to the next instruction.  They can be  11:17:32

 7    hung and move on to the next instruction.  I   11:17:35

 8    know -- I can -- if you want, Judge, I can get 11:17:38

 9    that for you.  You're looking at me a little   11:17:40

10    skeptical.                                     11:17:44

11              THE COURT:  No.  No.  No.  I was just 11:17:45

12    looking at you.                                11:17:46

13              MS. BREMNER:  Okay.  Because I know   11:17:47

14    this has come up before during closing         11:17:48

15    arguments and the state would say, you know,   11:17:51

16    before moving on -- they didn't do it in this  11:17:51

17    case, I'm not saying they did that, but it's   11:17:55

18    come up before so I've had to do research on   11:17:55

19    this.  But they do not have to agree that it's 11:17:58

20    not first degree or second degree before       11:18:01

21    moving on to the next one.  They can be hung   11:18:04

22    on it to go on to the next instruction.        11:18:08

23              THE COURT:  Before I weigh in, does  11:18:16

24    anyone else have anything else to say?         11:18:19

25              MR. SANKAR:  Just by way of          11:18:22

                              4
```

| | | |
|---|---|---|
| 1 | additions, Judge, the instructions give you | 11:18:24 |
| 2 | the connector between them.  So if it says you | 11:18:25 |
| 3 | do not find him guilty of X then you are to | 11:18:28 |
| 4 | then consider whether he is guilty of this. | 11:18:31 |
| 5 | That's why I think that the instruction, as we | 11:18:34 |
| 6 | indicated, just say "be guided by the | 11:18:36 |
| 7 | instructions," to follow them is more than | 11:18:38 |
| 8 | sufficient.  We haven't given a more specific | 11:18:41 |
| 9 | instruction because of the concern that that | 11:18:43 |
| 10 | would somehow indicate to them that we want | 11:18:45 |
| 11 | them to do something differently and I think | 11:18:47 |
| 12 | that we should be consistent.  I think "be | 11:18:49 |
| 13 | guided by the instructions" is the most | 11:18:52 |
| 14 | appropriate path. | 11:18:54 |
| 15 | MR. MESSONNIER:  If I may intervene, | 11:18:57 |
| 16 | the instruction in 402.05 basically lets them | 11:18:57 |
| 17 | set their own rules for how they're handling | 11:19:01 |
| 18 | deliberations and it's not up to the court to | 11:19:03 |
| 19 | tell them when they should move on, or -- they | 11:19:06 |
| 20 | could theoretically start at the bottom and | 11:19:07 |
| 21 | work their way up. | 11:19:11 |
| 22 | THE COURT:  All right.  So I think | 11:19:12 |
| 23 | sort of like I responded to the state | 11:19:13 |
| 24 | yesterday. | 11:19:17 |
| 25 | MS. BREMNER:  Judge, I'm fine with | 11:19:17 |

5

| | | |
|---|---|---|
| 1 | that.  The instructions are there and they | 11:19:18 |
| 2 | do -- I think the instruction is consistent. | 11:19:20 |
| 3 | I was just trying to avoid, clearly, a hung | 11:19:22 |
| 4 | jury quite possibly by this question, and | 11:19:26 |
| 5 | maybe the next questions will -- maybe we | 11:19:29 |
| 6 | should look at the next questions before even | 11:19:31 |
| 7 | answering this question. | 11:19:33 |
| 8 | THE COURT:  I've looked at them. | 11:19:35 |
| 9 | MS. BREMNER:  Okay. | 11:19:38 |
| 10 | THE COURT:  No.  Can I have it back? | 11:19:39 |
| 11 | MS. CASTLE:  Yes, Your Honor. | 11:19:44 |
| 12 | THE COURT:  But just to complete my | 11:19:44 |
| 13 | thought, I think sort of like I was saying to | 11:19:46 |
| 14 | the state, though, yesterday, I don't think we | 11:19:49 |
| 15 | should deviate from what they suggest because | 11:19:55 |
| 16 | I don't want to give the indication that I'm | 11:19:58 |
| 17 | telling them that they should do something | 11:20:00 |
| 18 | other than what the instructions say.  And so | 11:20:02 |
| 19 | I think my only response should be, and will | 11:20:05 |
| 20 | be, the jury shall be guided by the court's | 11:20:10 |
| 21 | instructions; all right? | 11:20:12 |
| 22 | MS. CASTLE:  Yes, Your Honor.  Thank | 11:20:15 |
| 23 | you. | 11:20:16 |
| 24 | THE COURT:  All right.  Next | 11:20:16 |
| 25 | question: If the jury cannot unanimously agree | 11:20:56 |

6

```
 1    on a proposition listed under Instruction 19,      11:21:02

 2    how do we proceed?                                  11:21:05

 3              MR. SANKAR:  Judge, I apologize.          11:21:16

 4              MR. MESSONNIER:  19 would be murder       11:21:21

 5    first for Singleton, I'm assuming, if my            11:21:25

 6    memory's correct.                                   11:21:29

 7              MS. CASTLE:  Yes.  That's what I           11:21:34

 8    recall as well.                                     11:21:36

 9              MS. BREMNER:  That's correct.             11:21:43

10              MS. CASTLE:  I think the state's          11:21:44

11    response would be the same.  The jury will be       11:21:45

12    guided by the instructions.                         11:21:47

13              MR. SANKAR:  (Nods head.)                 11:21:49

14              THE COURT:  It really doesn't matter      11:21:52

15    to me what instruction it was.  I mean, I know      11:21:53

16    we're looking just for -- to know.  Any             11:21:55

17    objection to the same response, the court's         11:22:07

18    rationale being the same as what I've               11:22:14

19    previously stated?                                  11:22:16

20              MS. BREMNER:  I mean.                      11:22:18

21              THE COURT:  Go ahead.                      11:22:38

22              MS. BREMNER:  All the answers are in       11:22:39

23    the instructions, so I mean, I've never --          11:22:41

24    these are very specific questions.  I've            11:22:43

25    certainly never encountered where we actually       11:22:45
```

7

| | | |
|---|---|---|
| 1 | say please look at instruction number | 11:22:49 |
| 2 | something to pay attention to what's going on. | 11:22:51 |
| 3 | All the answers they need are in the | 11:22:53 |
| 4 | instructions, so I guess if that's. | 11:22:55 |
| 5 | THE COURT: So is there any | 11:22:57 |
| 6 | objection? | 11:22:58 |
| 7 | MS. BREMNER: No. | 11:23:00 |
| 8 | THE COURT: Counsel for the state? | 11:23:02 |
| 9 | MS. CASTLE: No, Your Honor. | 11:23:03 |
| 10 | THE COURT: Last question: If we all | 11:23:48 |
| 11 | cannot agree on Instruction 27, can we move on | 11:23:51 |
| 12 | to the next proposition? If we all cannot | 11:23:57 |
| 13 | agree on murder Count I for Darryl, do we move | 11:24:02 |
| 14 | on to the proposition. | 11:24:08 |
| 15 | MR. MESSONNIER: 27 is ACA on I. | 11:24:22 |
| 16 | MS. CASTLE: I think the state's | 11:24:33 |
| 17 | response would be the same. | 11:24:37 |
| 18 | THE COURT: Ms. Bremner, do you -- | 11:24:44 |
| 19 | did you get a chance to see this? | 11:24:49 |
| 20 | MS. BREMNER: Yes, Judge. Can I | 11:24:50 |
| 21 | think out loud? | 11:24:54 |
| 22 | THE COURT: Sure. | 11:24:56 |
| 23 | MS. BREMNER: I'm remembering one | 11:24:56 |
| 24 | other time where this kind of came up in a | 11:25:00 |
| 25 | situation and the court, because it looked | 11:25:03 |

8

| | | |
|---|---|---|
| 1 | like they were going to hang, asked the jury | 11:25:05 |
| 2 | if there was anything they could agree on; and | 11:25:09 |
| 3 | if they could agree on something, to do so. | 11:25:12 |
| 4 | THE COURT: Was that in open court or | 11:25:14 |
| 5 | was that in the written response given back to | 11:25:16 |
| 6 | the jury? | 11:25:20 |
| 7 | MS. BREMNER: It was after the jury | 11:25:22 |
| 8 | had written that they were stuck on a certain | 11:25:23 |
| 9 | count. So he had them come back down and it | 11:25:26 |
| 10 | was in open court. | 11:25:29 |
| 11 | THE COURT: Right. In open court. | 11:25:30 |
| 12 | Right. | 11:25:32 |
| 13 | MS. BREMNER: And it was in open | 11:25:32 |
| 14 | court, yeah. | 11:25:32 |
| 15 | Again, I'm just thinking out loud. | 11:25:33 |
| 16 | If -- I don't know what situation they're in | 11:25:36 |
| 17 | right now, if they're getting to the point of | 11:25:39 |
| 18 | serious frustration or if they're just | 11:25:46 |
| 19 | curious, so anyways, that's just kind of my | 11:25:49 |
| 20 | thought process of what I'm going through | 11:25:55 |
| 21 | right now. Based on their questions, it seems | 11:25:58 |
| 22 | like they're seeking direction. Obviously, | 11:26:02 |
| 23 | the directions are in the instructions, but | 11:26:04 |
| 24 | maybe more specific direction from the court | 11:26:08 |
| 25 | would assist them. But if they hang, they | 11:26:11 |

9

```
 1    hang, I guess.  I don't know.                11:26:13

 2         MR. MESSONNIER:  I believe the case     11:26:15

 3    Ms. Bremner's referring to is the Fonville   11:26:15

 4    case.  The jury gave a response they had     11:26:18

 5    reached a conclusion on some counts and not on  11:26:21

 6    others.  I'm not sure you've got that        11:26:25

 7    communication.                               11:26:29

 8         MS. BREMNER:  I'm actually just         11:26:29

 9    talking about a case that is just in court in  11:26:31

10    a trial, but.                                11:26:33

11         THE COURT:  I have been involved in     11:26:33

12    cases where the jury has indicated that they  11:26:35

13    may be deadlocked and in certain counts,     11:26:42

14    issues, and the court has brought them down  11:26:49

15    and not asked them to indicate in what       11:26:51

16    direction or to what extent, but has asked   11:26:54

17    them, A, would further deliberations be of   11:26:58

18    assistance, and have they been able to agree  11:27:07

19    on anything.  I have been involved in those  11:27:11

20    type situations.  I don't know if -- that    11:27:15

21    we're there yet.                             11:27:18

22         MS. BREMNER:  Okay.                     11:27:19

23         THE COURT:  I'm not naive enough to     11:27:21

24    believe that the responses that we're giving  11:27:26

25    them are not going to create some frustration.  11:27:28
```

10

```
1    I'm not naive enough to think that prior to        11:27:32
2    our responses there hasn't been some               11:27:35
3    frustration.  But I think that we are,             11:27:39
4    collectively, this group, we're in the same        11:27:41
5    position by way of what we can respond to now       11:27:45
6    because we're not in the position of knowing        11:27:48
7    that they are just deadlocked and stuck and         11:27:50
8    cannot move forward if they go back and read        11:27:53
9    the instructions and digest them.                  11:27:56
10           So that being said, I think even with       11:28:01
11   a strenuous objection, my only response can be      11:28:09
12   what I've just stated these two previous            11:28:12
13   times.  I will allow either side to object and      11:28:15
14   make a record on that objection, but I believe      11:28:19
15   that's where -- the posture that we're in.          11:28:21
16           MS. BREMNER:  That's fine, Judge.           11:28:24
17           MS. CASTLE:  The state agrees.              11:28:25
18           THE COURT:  All right.  By way of a         11:28:27
19   housekeeping matter, if they buzz over the          11:28:59
20   lunch period, I'm going to swear in Division        11:29:04
21   8's law clerk, Matt.  He's going to help me.        11:29:07
22   Mr. Smith wants to do other things for some         11:29:13
23   reason.  So anyway, so if Matt reaches out to       11:29:16
24   you, that's why.                                    11:29:21
25           MR. SANKAR:  No problem.                    11:29:22
```

11

```
 1              THE COURT:  All right.                 11:29:23

 2              MS. DOLLAR:  Do you want us to e-mail  11:29:26

 3    Matt our information as well?                    11:29:31

 4              THE COURT:  I'll get it to him.        11:30:09

 5              (Recess.)                              13:56:20

 6              THE COURT:  This is in the matter of   13:56:20

 7    State of Missouri vs. Reginald Jones.  These     13:56:30

 8    conversations are taking place outside the       13:56:33

 9    empanelled jury and it's a question from the     13:56:38

10    jury:  Referring to Instruction 19, last         13:56:40

11    sentence.  Does the word, parentheses -- no.     13:56:45

12    Excuse me -- quote, "you" refer to the           13:56:50

13    individual juror or to jury as a whole?          13:56:54

14              MS. CASTLE:  Be guided by the          13:57:22

15    instructions?  I don't -- you will be guided     13:57:23

16    by the instructions is, Judge, the only          13:57:26

17    response I can understand in terms of that       13:57:28

18    particular question.                             13:57:33

19              THE COURT:  Say that again,            13:57:37

20    Ms. Castle.                                      13:57:39

21              MS. CASTLE:  I think it's consistent   13:57:39

22    with the other questions and would reflect the   13:57:40

23    court's response of you will be guided by the    13:57:44

24    instructions.                                    13:57:47

25              THE COURT:  Ms. Bremner.               13:57:49
```

```
 1                MS. CASTLE:  I don't know else to        13:57:50
 2      answer that.                                       13:57:52
 3                MS. BREMNER:  I mean, there is an         13:57:56
 4      instruction about their individual duty in         13:57:58
 5      there, too, so I don't -- I would have to          13:58:00
 6      agree it's all in the instructions.                13:58:03
 7                THE COURT:  The jury shall be guided      13:58:05
 8      by the court's instructions.  Any objection to     13:58:08
 9      that?                                              13:58:11
10                MS. BREMNER:  No.                         13:58:11
11                MS. CASTLE:  No.                          13:58:12
12                MS. BREMNER:  What was the question       13:58:13
13      again?  Sorry.                                     13:58:14
14                THE COURT:  Referring to Instruction     13:58:17
15      19, last sentence.  Does the word, quote,          13:58:18
16      "you" refer to the individual juror or to the      13:58:22
17      jury as a whole?                                   13:58:26
18                MS. BREMNER:  Can we say the             13:58:35
19      individual juror?                                  13:58:37
20                MS. CASTLE:  I mean, I think that         13:58:42
21      would be you'll be guided by the court's           13:58:44
22      instruction.  That sentence is in every single     13:58:47
23      one of the instructions.  It would just change     13:58:51
24      the charge.  So to define "you" on Instruction     13:58:53
25      19 would define "you" in all of the                13:58:58
```

13

| | | |
|---|---|---|
| 1 | instructions, so to me, it would just be you | 13:59:01 |
| 2 | will be guided by the court's instructions. | 13:59:03 |
| 3 | THE COURT: Unless I get some further | 13:59:13 |
| 4 | guidance, I'm sending it back up. | 13:59:17 |
| 5 | MS. BREMNER: Can I see it again? | 13:59:19 |
| 6 | THE COURT: All right. | 13:59:56 |
| 7 | MR. SANKAR: Thank you, Judge. | 13:59:57 |
| 8 | MS. CASTLE: Thank you. | 13:59:58 |
| 9 | (Recess.) | 15:11:35 |
| 10 | THE COURT: All right. There is a | 15:11:35 |
| 11 | question. And this is taking place outside of | 15:12:02 |
| 12 | our deliberating jury: There are jurors that | 15:12:08 |
| 13 | do not want to look at all of the possible | 15:12:13 |
| 14 | charges or follow the instructions. We are at | 15:12:16 |
| 15 | a standstill. Please advise. | 15:12:19 |
| 16 | MS. BREMNER: Can I see it? | 15:12:38 |
| 17 | MS. CASTLE: I think that's... | 15:13:23 |
| 18 | MS. BREMNER: Can I think out loud? | 15:13:29 |
| 19 | THE COURT: You may. | 15:13:31 |
| 20 | MS. BREMNER: Okay. I'm mostly | 15:13:32 |
| 21 | looking at the we are at a standstill | 15:13:40 |
| 22 | language. I think this goes back to what I | 15:13:42 |
| 23 | was thinking earlier, which is maybe bringing | 15:13:48 |
| 24 | them down and seeing if they can make a | 15:13:51 |
| 25 | decision as to any of the counts or even | 15:13:53 |

14

```
 1    asking if they -- more time would help.  I        15:13:57

 2    mean, I think that seems silly when they          15:14:00

 3    said -- how much time they've spent and that      15:14:03

 4    they've said they're at a standstill.  It's       15:14:04

 5    just something I'm thinking.  I don't know.       15:14:08

 6           THE COURT:  What's the state's            15:14:13

 7    position, or if you want to think out loud,       15:14:14

 8    not necessarily take a position?                  15:14:16

 9           MS. CASTLE:  I -- go ahead.               15:14:19

10           MR. SANKAR:  Can we just have a           15:14:22

11    moment, Judge?                                    15:14:24

12           (Discussion held off the record.)         15:14:25

13           MS. CASTLE:  Judge, I think that our      15:16:01

14    position would be if they could make a            15:16:04

15    determination as to any count, not any thing.    15:16:07

16    To me, if you ask on any thing, that somewhat     15:16:10

17    invades --                                        15:16:14

18           MS. BREMNER:  I meant count.  Sorry.      15:16:15

19           MS. CASTLE:  Sorry.  I...                 15:16:16

20           THE COURT:  I'm following.               15:16:17

21           MS. CASTLE:  And then I don't know --     15:16:18

22    I don't think we're at a point, necessarily,      15:16:21

23    to see if a break -- I don't know when they       15:16:28

24    took a break, but if a break might help,          15:16:30

25    perhaps it's -- they've been talking for a        15:16:35
```

15

```
 1    long time.                                        15:16:37
 2            THE COURT:  I was going to ask that.      15:16:38
 3    When is the last time they took a break?          15:16:39
 4            (Discussion held off the record.)         15:17:01
 5            THE COURT:  Like an hour ago, 45          15:17:01
 6    minutes ago.                                      15:17:03
 7            MS. BREMNER:  So a break is not            15:17:04
 8    necessary.                                        15:17:05
 9            THE COURT:  It might not hurt to          15:17:06
10    suggest one, though.  So are both sides          15:17:08
11    agreeable that we call them down, ask them,       15:17:13
12    again, without telling us what, if they are --    15:17:17
13    if they've been able to agree on at least a       15:17:26
14    count?                                            15:17:31
15            MS. BREMNER:  Yeah.                        15:17:32
16            THE COURT:  Again, not telling me         15:17:33
17    what, how, who, when, where, any specifics,       15:17:34
18    but have you as a group been able to agree at     15:17:39
19    least to a count?                                 15:17:44
20            MS. CASTLE:  I think that works.          15:17:45
21            MS. BREMNER:  Yeah.                        15:17:46
22            THE COURT:  Also, can I inquire as to     15:17:48
23    when the last time they -- or tell them, it's     15:17:50
24    my understanding that they took a break less      15:17:53
25    than an hour ago, 45 minutes ago, and if maybe    15:17:56
```

16

| | | |
|---|---|---|
| 1 | taking a nice break again would help recharge | 15:18:00 |
| 2 | their batteries? | 15:18:04 |
| 3 | MS. CASTLE:  Yes. | 15:18:05 |
| 4 | THE COURT:  Now, let's do worst-case | 15:18:06 |
| 5 | scenario.  What if they say to the first | 15:18:09 |
| 6 | question no, we haven't agreed on anything. | 15:18:13 |
| 7 | Then what? | 15:18:20 |
| 8 | MS. CASTLE:  I think that would | 15:18:22 |
| 9 | prompt -- | 15:18:24 |
| 10 | THE COURT:  Yeah.  Go take a break. | 15:18:26 |
| 11 | MS. CASTLE:  -- the second question. | 15:18:28 |
| 12 | And if they said no, if more time -- then ask | 15:18:29 |
| 13 | if more time would help.  And if they say no, | 15:18:35 |
| 14 | then... | 15:18:41 |
| 15 | THE COURT:  Okay.  So here's what I'm | 15:18:43 |
| 16 | going to do, unless you guys just tell me this | 15:18:45 |
| 17 | is a horrible idea.  And it may be.  I'm going | 15:18:47 |
| 18 | to use the -- try to use the psychological | 15:18:56 |
| 19 | effect of the robe by way of being a little | 15:19:01 |
| 20 | more assertive.  If they say no -- and again, | 15:19:03 |
| 21 | I'm playing worst-case scenario -- I'm going | 15:19:07 |
| 22 | to tell them, we're going to take a break. | 15:19:11 |
| 23 | Take a break, go outside, jog, get on | 15:19:13 |
| 24 | their phone, talk to somebody about anything | 15:19:16 |
| 25 | other than this case, obviously, and then | 15:19:20 |

17

| | | |
|---|---|---|
| 1 | you're going to go back upstairs and you're | 15:19:22 |
| 2 | going to get back to work.  It's a hard case. | 15:19:25 |
| 3 | It should take a long time.  This is nothing | 15:19:28 |
| 4 | unusual.  It should take a long time.  Get | 15:19:31 |
| 5 | back upstairs and get to work.  We've got | 15:19:34 |
| 6 | time. | 15:19:37 |
| 7 | MS. CASTLE:  Okay. | 15:19:38 |
| 8 | THE COURT:  Anybody have a problem | 15:19:40 |
| 9 | with that?  I mean, if you do, Ms. Bremner, I | 15:19:42 |
| 10 | don't have to do that. | 15:19:47 |
| 11 | MS. BREMNER:  I think the statement | 15:19:52 |
| 12 | that there are jurors refusing to consider | 15:19:58 |
| 13 | instructions may warrant a mistrial. | 15:20:01 |
| 14 | THE COURT:  I don't know exactly what | 15:20:07 |
| 15 | that means, though.  And so if I tell them to | 15:20:08 |
| 16 | go take a break, get upstairs and go to work, | 15:20:12 |
| 17 | then collectively, I'm going to expect them to | 15:20:16 |
| 18 | go to work. | 15:20:21 |
| 19 | MS. BREMNER:  I understand.  My | 15:20:23 |
| 20 | understanding is they just took a break. | 15:20:24 |
| 21 | THE COURT:  I understand. | 15:20:27 |
| 22 | MS. BREMNER:  Okay. | 15:20:28 |
| 23 | THE COURT:  I understand.  But I'm | 15:20:35 |
| 24 | sending them on a break and then I'm sending | 15:20:36 |
| 25 | them up to go to work.  And again, that's -- | 15:20:40 |

```
 1        I'm going to let you say what you need to        15:20:49
 2        say -- that's under the guise of worst-case      15:20:51
 3        scenario.  They haven't agreed on anything.      15:20:55
 4        If they've agreed on something, that's a         15:20:58
 5        positive spin of, okay, you've agreed on         15:21:00
 6        something.  You got a little more work to do.    15:21:03
 7        And I'm probably still going to suggest we       15:21:06
 8        take a break.                                    15:21:09
 9             MS. BREMNER:  All right.  So you're         15:21:10
10        first asking if they've agreed to anything.  I  15:21:11
11        mean, not anything, to a count.                  15:21:12
12             THE COURT:  A count.                        15:21:14
13             MS. BREMNER:  We need to go down and        15:21:15
14        get Mr. Jones before you bring them down.        15:21:16
15             THE COURT:  That's fine.  Right now,        15:21:19
16        though, there's no objection to what I've just  15:21:26
17        stated?                                          15:21:28
18             MS. BREMNER:  No.                           15:21:29
19             MS. CASTLE:  No.                            15:21:29
20             (Recess.)                                   15:26:43
21             MS. BREMNER:  I'm okay with the first      15:26:43
22        part seeing if they have reached a result, but  15:26:44
23        I think your second part of telling them to     15:26:47
24        keep working or take a break and then go back   15:26:50
25        to work, I feel like these jurors have put a    15:26:52
```

19

```
 1    lot of time into this, and please don't take      15:26:55

 2    what I'm going to say the wrong way, I feel        15:27:01

 3    like it might be a little bully-ish?               15:27:04

 4            THE COURT:  Okay.  I take no offense        15:27:10

 5    to that.                                           15:27:12

 6            MS. BREMNER:  Thank you, Judge.  I          15:27:12

 7    think I would prefer language along the lines      15:27:13

 8    of more would it help to have more time            15:27:17

 9    instead of -- and I know -- that would be my       15:27:20

10    objection, Judge.                                  15:27:24

11            THE COURT:  Okay.  By way of saying         15:27:25

12    go upstairs, get to work, the tone that that       15:27:30

13    might set?                                         15:27:34

14            MS. BREMNER:  Right.                        15:27:35

15            THE COURT:  Okay.                           15:27:35

16            MS. BREMNER:  Because I think we            15:27:36

17    would all agree they have put in a lot of          15:27:37

18    hours.  They have taken this very seriously.       15:27:39

19    It's what we all ask for.  It's what we all        15:27:42

20    want.  I know the court appreciates it.  I'm       15:27:44

21    just concerned that -- I don't know.               15:27:47

22            THE COURT:  I understand.                   15:27:54

23            MS. BREMNER:  I'm concerned of how          15:27:55

24    they may interpret what the court is saying.       15:27:57

25    I guess I'm concerned of how they might            15:27:59
```

20

```
 1      interpret what the court is saying.              15:28:04

 2              THE COURT:  Point well taken.  State.    15:28:06

 3              MS. CASTLE:  Judge, I am comfortable     15:28:07

 4      with the court's discretion on how to address   15:28:09

 5      them.  I think we've made it clear what points  15:28:12

 6      we want the court to address and I'm            15:28:15

 7      comfortable with the court's discretion.        15:28:17

 8              The other thing I think we wanted to     15:28:21

 9      just put out there was, were you making a       15:28:23

10      formal motion on a mistrial earlier?            15:28:26

11              MS. BREMNER:  No.                        15:28:28

12              MS. CASTLE:  Okay.                       15:28:29

13              THE COURT:  So Ms. Bremner, let me       15:28:29

14      ask this -- and your point is well taken --     15:28:31

15      again, I'm just playing worst-case scenario.    15:28:36

16      Done the way that you suggested, do you think   15:28:41

17      more time would help, what if they say, Judge,  15:28:43

18      unequivocally no?                               15:28:46

19              MS. BREMNER:  Then I would ask for       15:28:48

20      the mistrial.                                   15:28:50

21              THE COURT:  What would the state's       15:28:51

22      position be then?                               15:28:53

23              MR. SANKAR:  This is my                  15:28:59

24      understanding, Judge.  If the jury comes down   15:29:00

25      and says we haven't agreed to anything and you  15:29:03
```

21

```
 1    say would more time help, I think that then      15:29:05
 2    the second part of what you said before might     15:29:08
 3    be appropriate first, which is how about a        15:29:10
 4    break?  Would a break help and come back and      15:29:14
 5    let me know whether you think more time would     15:29:15
 6    help?  That's what I would suggest before         15:29:17
 7    going to the drastic end of a mistrial.  We       15:29:20
 8    don't know exactly where they are in that         15:29:23
 9    disagreement.                                     15:29:27
10           THE COURT:  So procedurally, would it      15:29:27
11    be, have you agreed to any count -- again,        15:29:30
12    worst-case scenario -- no, we have not.  I        15:29:32
13    would say, how about we take a break, then        15:29:36
14    would come back, or do you think taking a         15:29:38
15    break would help and then they say no.  Then I    15:29:43
16    guess she would request, at the bench, a          15:29:52
17    mistrial.                                         15:29:56
18           MR. MESSONNIER:  Only question I           15:29:59
19    would ask after they say they don't want to       15:30:00
20    break, which is do you think more deliberation    15:30:02
21    would help?                                       15:30:04
22           MR. SANKAR:  More time first and then      15:30:13
23    after that maybe take a break.                    15:30:16
24           MS. BREMNER:  I would just ask that        15:30:22
25    they be posed as questions instead of             15:30:31
```

22

```
 1    commands.                                         15:30:33

 2            THE COURT:  So any agreement first,       15:30:35

 3    then next question would be, again, assuming      15:30:44

 4    no, would be --                                   15:30:48

 5            MS. BREMNER:  Do you think more time.     15:30:56

 6            THE COURT:  Would more time be            15:30:50

 7    helpful.  Again, worst-case scenario, no,         15:30:52

 8    what's the next question?                         15:31:05

 9            MS. BREMNER:  Would taking a break        15:31:08

10    help.                                             15:31:09

11            THE COURT:  Worst-case scenario.          15:31:15

12            MS. BREMNER:  I would make a mistrial     15:31:18

13    request.                                          15:31:20

14            MS. CASTLE:  Judge, I just have a         15:31:20

15    question.  Do we need to be lining up the         15:31:24

16    questions on whether or not we have a not         15:31:26

17    worst-case scenario?  Like if they came back      15:31:30

18    and have you made a decision as to anything,      15:31:33

19    yes, then they go back upstairs?  You're just     15:31:36

20    going to send them upstairs and not ask about     15:31:40

21    a break?                                          15:31:45

22            THE COURT:  Well, if they say they        15:31:45

23    have an agreement, I'm going to ask them if       15:31:46

24    they -- it's my understanding they took a         15:31:50

25    break about an hour ago.  Would it be helpful     15:31:52
```

23

```
 1          to take another break.  If they say no, I'm       15:31:56

 2          going to ask would more time be helpful.  If       15:32:00

 3          they don't want a break -- another break,          15:32:08

 4          would more time be helpful in their                15:32:10

 5          deliberations.                                     15:32:15

 6                    MS. CASTLE:  Okay.                        15:32:16

 7                    MS. BREMNER:  (Nods head.)                15:32:19

 8                    THE COURT:  And then we'll go from        15:32:20

 9          there.                                             15:32:21

10                    MS. BREMNER:  So if they say they are     15:32:22

11          in agreement on any count, you're going to go      15:32:23

12          up and ask them to fill out the forms for          15:32:27

13          those counts?                                      15:32:29

14                    THE COURT:  Huh-uh.                       15:32:31

15                    MS. BREMNER:  Okay.  You're just          15:32:32

16          going to ask them to keep deliberating; if         15:32:33

17          deliberations would help.                          15:32:37

18                    THE COURT:  Yes.  All right.  I'm         15:32:38

19          going to bring them down.  So make your            15:32:40

20          request, if necessary, at the bench, not --        15:32:46

21                    MS. BREMNER:  Yeah.                       15:32:49

22                    MR. SANKAR:  Judge may we add one         15:34:31

23          other thing?                                       15:34:32

24                    THE COURT:  Yes.                          15:34:33

25                    MR. SANKAR:  Before Your Honor            15:34:34
```

24

|    |                                                              |          |
|----|--------------------------------------------------------------|----------|
| 1  | mentioned that saying to the jury this is a                  | 15:34:35 |
| 2  | difficult case, you're not --                                | 15:34:40 |
| 3  | THE CLERK:  All rise.                                         | 15:34:40 |
| 4  | THE COURT:  Hold on.  Hold on.                                | 15:34:40 |
| 5  | MR. SANKAR:  -- that the deliberation                        | 15:34:47 |
| 6  | time frame is not unusual, and then posing the               | 15:34:48 |
| 7  | question do you think more time would help to                | 15:34:51 |
| 8  | let them know that this isn't something where                | 15:34:53 |
| 9  | you're up against a clock before asking that                 | 15:34:56 |
| 10 | question as one thing, maybe another                         | 15:34:58 |
| 11 | suggestion to take into account here as we                   | 15:35:00 |
| 12 | move on that roadmap.                                        | 15:35:02 |
| 13 | THE COURT:  Ms. Bremner.                                      | 15:35:03 |
| 14 | MS. BREMNER:  That's fine.                                    | 15:35:04 |
| 15 | THE COURT:  That's agreeable?                                 | 15:35:06 |
| 16 | MS. BREMNER:  Yes.  That's fine,                              | 15:35:08 |
| 17 | Judge.  Sorry.                                               | 15:35:09 |
| 18 | THE COURT:  Okay.  So Mr. Sankar,                            | 15:35:09 |
| 19 | you're suggesting to say that when?                          | 15:35:12 |
| 20 | MR. SANKAR:  Right after you ask if                          | 15:35:16 |
| 21 | there's any agreement to any count.  If they,                | 15:35:18 |
| 22 | for instance, say no, then say, there's no                   | 15:35:19 |
| 23 | time frame to this.  This is a difficult case.               | 15:35:19 |
| 24 | Take your time with it, however Your Honor                   | 15:35:23 |
| 25 | would like to phrase that, and then adding in                | 15:35:23 |

25

```
 1    would more time help you and then following        15:35:25
 2    the questions in the sequence we just              15:35:28
 3    discussed.                                         15:35:29
 4              THE COURT:  All right.  Mr. Smith.       15:35:30
 5              (The jury entered the courtroom.)        15:36:00
 6              THE COURT:  Good afternoon, ladies       15:36:00
 7    and gentlemen.  You may be seated.                 15:36:01
 8    Mr. Foreman.                                       15:36:07
 9              FOREPERSON:  Yes, sir.                   15:36:08
10              THE COURT:  You may remain seated.       15:36:09
11    I'm going to ask you a question and I do not       15:36:11
12    want any specifics; okay?                          15:36:13
13              FOREPERSON:  Okay.                       15:36:16
14              THE COURT:  Again, no specifics, but     15:36:17
15    has the jury been able to reach an agreement       15:36:21
16    on any of the counts?  And again, I don't want     15:36:25
17    any specifics, but --                             15:36:28
18              THE FOREMAN:  Yes, Your Honor.           15:36:31
19              THE COURT:  You have been able to        15:36:32
20    reach an agreement at least on one of the          15:36:33
21    counts?                                            15:36:36
22              FOREPERSON:  Yes, Your Honor.            15:36:37
23              THE COURT:  All right.  First off, I     15:36:38
24    went to tell the group, all of the parties         15:36:41
25    thank you tremendously.  We recognize that you     15:36:45
```

26

|    |                                                        |          |
|----|--------------------------------------------------------|----------|
| 1  | have done a tremendous job thus far. This is           | 15:36:50 |
| 2  | not easy. It was a difficult case and you              | 15:36:55 |
| 3  | have done your job. These cases are difficult          | 15:36:58 |
| 4  | and they take time and we recognize that, and          | 15:37:03 |
| 5  | we thank you.                                          | 15:37:07 |
| 6  | Mr. Foreman, I'm going to ask you, do                  | 15:37:09 |
| 7  | you think additional time would be helpful for         | 15:37:15 |
| 8  | the jury?                                              | 15:37:17 |
| 9  | FOREPERSON: Upon clarification of                      | 15:37:18 |
| 10 | some instructions.                                     | 15:37:25 |
| 11 | THE COURT: Okay. All right. Let me                     | 15:37:31 |
| 12 | ask this: It's my understanding that the jury          | 15:37:34 |
| 13 | took a break probably just a little bit over           | 15:37:37 |
| 14 | an hour ago; is that correct?                          | 15:37:41 |
| 15 | THE FOREPERSON: Yes, Your Honor.                       | 15:37:43 |
| 16 | THE COURT: Do you think that another                   | 15:37:43 |
| 17 | break would be helpful?                                | 15:37:45 |
| 18 | FOREPERSON: Right now, Your Honor?                     | 15:37:50 |
| 19 | THE COURT: Yes.                                        | 15:37:51 |
| 20 | FOREPERSON: No.                                        | 15:37:52 |
| 21 | THE COURT: Okay. So Counsel,                           | 15:37:54 |
| 22 | approach.                                              | 15:38:28 |
| 23 | (Counsel approached the bench and the                  | 15:38:52 |
| 24 | following proceedings were held:)                      | 15:38:53 |
| 25 | THE COURT: I didn't hear them say                      | 15:38:53 |

27

```
 1        that they could not.  I mean, he said          15:38:54

 2        clarification and you know I can't give it.     15:38:57

 3               MR. SANKAR:  What Sara's saying is       15:40:10

 4        ask them to return upstairs and send back a     15:40:12

 5        question and see whether or not we can -- if    15:40:15

 6        there's anything different than we can say;     15:40:17

 7        otherwise, it will just be you'll be guided by  15:40:20

 8        the instructions response, but I think they     15:40:23

 9        aren't saying that they're unable to            15:40:26

10        deliberate.  They're just asking about a        15:40:28

11        question regarding instructions.  That's        15:40:31

12        probably where we are.                          15:40:35

13               THE COURT:  Ms. Bremner.                 15:40:36

14               MS. BREMNER:  I think we should --       15:40:37

15        based on that answer and based on how we've     15:40:52

16        answered all their questions, I think the most  15:40:55

17        we should do is ask them to whatever count or   15:40:57

18        counts that they can come to an agreement on,   15:41:01

19        come to an agreement on and that's it.  I       15:41:03

20        mean, it's not like we can answer their         15:41:06

21        questions that they've asked unless we do.  We  15:41:09

22        haven't done it yet, so.                        15:41:12

23               THE COURT:  Well, we can't give them     15:41:14

24        any direction.  I mean, we can guess if they    15:41:21

25        asked for clarification, they're going to ask   15:41:25
```

28

| | | |
|---|---|---|
| 1 | for specifics.  We're not going to give them | 15:41:27 |
| 2 | specifics.  We're going to give more | 15:41:30 |
| 3 | directed -- but we're going to get very | 15:41:33 |
| 4 | specific questions of which we can't answer | 15:41:35 |
| 5 | and so I'm inclined to send them upstairs, | 15:41:38 |
| 6 | tell them to continue to deliberate, and then | 15:41:43 |
| 7 | we'll just go from there. | 15:41:46 |
| 8 | MS. CASTLE:  The clarification I can | 15:41:49 |
| 9 | give you is to follow the instruction.  Like, | 15:41:57 |
| 10 | is there -- because I can't give the answer. | 15:42:00 |
| 11 | Maybe we've talked about it, right, so can the | 15:42:03 |
| 12 | court say, I understand you have questions | 15:42:06 |
| 13 | regarding the instructions.  The court's | 15:42:08 |
| 14 | response will continue to be that -- | 15:42:10 |
| 15 | THE COURT:  The problem with doing | 15:42:13 |
| 16 | that is they might have a question of | 15:42:14 |
| 17 | something else that if I put that, if I say | 15:42:21 |
| 18 | that, they won't send down the question. | 15:42:25 |
| 19 | MS. CASTLE:  Okay. | 15:42:27 |
| 20 | THE COURT:  So I would be afraid to | 15:42:29 |
| 21 | say that. | 15:42:31 |
| 22 | MS. CASTLE:  Fair enough. | 15:42:35 |
| 23 | THE COURT:  So just short of -- I | 15:42:36 |
| 24 | think just have them go upstairs to | 15:42:38 |
| 25 | deliberate. | 15:42:41 |

```
 1              MS. CASTLE:  I think that's fine.        15:42:42

 2              THE COURT:  I mean, Ms. Bremner,         15:42:43

 3      you're saying to ask for the specific count.     15:42:44

 4      I mean, I'm pretty sure we'll get ourselves in   15:42:50

 5      trouble for that.  What's the meaning for        15:42:52

 6      asking for the specific counts?                  15:43:00

 7              MS. BREMNER:  It sounds like they're      15:43:00

 8      hung.  I am just saying sending them back up     15:43:05

 9      when they've made it clear that they can't       15:43:09

10      reach a decision doesn't make a lot of sense,    15:43:10

11      but if they've reached a decision on any         15:43:13

12      counts, we can move forward with that.           15:43:16

13              MS. CASTLE:  That's not what he said,     15:43:19

14      no.                                              15:43:21

15              THE COURT:  Well, here's the deal.       15:43:22

16      They can have decisions off the record.  We      15:43:23

17      don't know.  It could be one of the four         15:43:27

18      counts.  So, I mean, they might say, look,       15:43:30

19      we're going to go upstairs, we're going to       15:43:34

20      come back downstairs and say we can't decide     15:43:40

21      the one last one and then they'll come and       15:43:40

22      tell us that.  But since we don't know, I'm      15:43:42

23      not going to make them choose right now.         15:43:44

24      They're going to tell us at the end of the day   15:43:47

25      that they can't.  Right now I think they've      15:43:50
```

                                30

```
 1    decided on some counts -- a count, at least.    15:43:54
 2    I mean -- go ahead.                             15:43:57
 3              MS. CASTLE:  Okay.  I was just going   15:43:59
 4    to say it's a quarter to 4.  They asked to      15:44:01
 5    leave yesterday at 4:00.  The court can ask     15:44:03
 6    them to return tomorrow to continue their --    15:44:06
 7    whether --                                      15:44:06
 8              THE COURT:  They left at 4:30 because  15:44:06
 9    I think somebody has to be gone by 5:30 or      15:44:11
10    something like that.  So they know how to ask   15:44:14
11    to leave.                                       15:44:15
12              (The proceedings returned to open     15:44:27
13    court.)                                         15:44:29
14              THE COURT:  All right.  Again, I want  15:44:29
15    to thank you for the time that you've put in.   15:44:35
16    And I am going to send you upstairs to          15:44:39
17    continue your deliberations; okay?  All right.  15:44:42
18    All rise.                                       15:44:46
19              (The jury exited the courtroom.)      15:45:18
20              THE COURT:  Here's what -- and I'm     15:45:18
21    not betting the farm on this, but if they       15:45:21
22    don't decide that they just want to give up in  15:45:26
23    total, I would anticipate that they would come  15:45:31
24    back by 4:30 and say, you know, they want to    15:45:34
25    come back in the morning because probably       15:45:37
```

31

```
 1      there are other obligations and that's been        15:45:39

 2      their pattern.  All right.                          15:45:42

 3               MS. CASTLE:  Thank you.                     15:45:45

 4               MR. SANKAR:  Thank you, Judge.              15:45:47

 5               (Recess.)                                   15:45:48

 6               THE COURT:  Okay.  Again, this              16:06:03

 7      discussion is taking place outside of our           16:06:13

 8      deliberating jury and the question reads:           16:06:16

 9      Does the definition of, quote, "sudden              16:06:19

10      passion" in Instruction 21 have the same            16:06:22

11      meaning as in, quote, "sudden passion" in           16:06:25

12      Instruction 7?  Please define the definition        16:06:29

13      of, quote, "sudden passion" in regards to           16:06:33

14      Instruction 21.                                     16:06:36

15               MS. CASTLE:  It's defined in there,         16:07:01

16      correct?                                            16:07:03

17               THE CLERK:  I don't think it's              16:07:05

18      defined in 21.  No.                                 16:07:06

19               MS. CASTLE:  Sudden passion is not          16:07:09

20      included -- (inaudible.)                            16:07:11

21               MR. SANKAR:  Well, let me -- Judge,         16:07:29

22      if we take a quick break just to see what the       16:07:32

23      options are here, whether or not there can be       16:07:35

24      a reference to be guided by the instruction or      16:07:39

25      whether or not there can or could be something      16:07:43
```

```
 1    different.  Do you mind if we do something?      16:07:45

 2          THE COURT:  You can do that, but let      16:07:48

 3    me throw this out there.  I get where we are     16:07:50

 4    and it obviously has to be in error if they're   16:07:57

 5    referring to an instruction where that           16:08:03

 6    definition is not included.  It has to be.        16:08:05

 7    Ms. Castle, you can sit down.                     16:08:09

 8          MS. CASTLE:  I'm sorry.                     16:08:11

 9          THE COURT:  No.  I mean, I'm causing       16:08:12

10    you to do that.                                   16:08:14

11          Here's my word of I don't know if          16:08:18

12    it's caution, but food for thought, I guess.     16:08:21

13    Obviously, they're referring to an instruction   16:08:24

14    that does have that.  If we even thought we       16:08:27

15    knew and suggested that instruction then we're   16:08:32

16    pointing them in a direction of an instruction   16:08:34

17    and we're being speculative as to whatever       16:08:37

18    that instruction is.  And that would be           16:08:40

19    fearful, in my opinion.                           16:08:43

20          MR. SANKAR:  Uh-huh.                        16:08:46

21          THE COURT:  But I'm not trying to          16:08:46

22    preclude you in figuring out what the options    16:08:49

23    are.  But, I mean, right now we're stuck with    16:08:52

24    was it 21 and 7 in their question?  Anyway.      16:08:54

25    Ms. Bremner.                                      16:09:00
```

33

| | | |
|---|---|---|
| 1 | MS. BREMNER:  Can I see 21? | 16:09:02 |
| 2 | MS. CASTLE:  Can I see 7? | 16:09:05 |
| 3 | (Discussion held off the record.) | 16:10:51 |
| 4 | MS. CASTLE:  Judge, I think we're all | 16:10:51 |
| 5 | understanding now why it's confusing, because | 16:10:53 |
| 6 | none of the definitions have been given in | 16:10:55 |
| 7 | Instruction 21.  All -- so this entire page | 16:10:57 |
| 8 | appears to not be included.  So we had, I | 16:11:01 |
| 9 | think, at one point done it, so we don't know | 16:11:09 |
| 10 | if there's a case -- and I'm sure that -- | 16:11:12 |
| 11 | where we could provide them with a corrected | 16:11:18 |
| 12 | instruction that gives them the definitions. | 16:11:21 |
| 13 | THE COURT:  Say that one more time. | 16:11:23 |
| 14 | MS. CASTLE:  Basically, we had an | 16:11:25 |
| 15 | instruction that we all agreed upon -- | 16:11:27 |
| 16 | THE COURT:  Okay. | 16:11:29 |
| 17 | MS. CASTLE:  -- that included the | 16:11:30 |
| 18 | definition of murder in the second degree as | 16:11:31 |
| 19 | it related to Count III. | 16:11:34 |
| 20 | THE COURT:  Okay. | 16:11:38 |
| 21 | MS. CASTLE:  It was submitted to the | 16:11:39 |
| 22 | court that was agreed upon by both the | 16:11:41 |
| 23 | parties. | 16:11:43 |
| 24 | THE COURT:  Okay. | 16:11:43 |
| 25 | MS. CASTLE:  That's not the | 16:11:43 |

34

```
 1        instruction that was given to the jury.  But        16:11:44
 2        in our -- we had discussed at one point             16:11:47
 3        pulling out the definitions and putting them        16:11:50
 4        on a definitions page.                              16:11:52
 5                   THE COURT:  Right.  Right.                16:11:54
 6                   MS. CASTLE:  And I think that that        16:11:56
 7        makes sense as to why the jury is struggling        16:11:57
 8        with the instruction because the definitions        16:12:00
 9        on the --                                           16:12:03
10                   THE COURT:  Weren't included.            16:12:03
11                   MS. CASTLE:  -- instruction are not      16:12:04
12        included, so we're not changing the                 16:12:05
13        instruction other than to give them the             16:12:08
14        definitions.  And so if we agree to give a          16:12:11
15        corrective instruction that was agreed upon in      16:12:14
16        the instructions conference, they would be          16:12:17
17        guided by the instruction that we approved and      16:12:21
18        would be given the definitions as they apply.       16:12:25
19                   THE COURT:  Understood.                  16:12:29
20                   (Discussion held off the record.)        16:12:53
21                   MS. BREMNER:  Can I have a second,       16:13:08
22        Judge?                                              16:13:12
23                   THE COURT:  Sure.                        16:13:12
24                   (Discussion held off the record.)        16:13:19
25                   THE COURT:  Ms. Castle, you can sit      16:17:00
```

35

```
 1    down.                                            16:17:02

 2                MS. CASTLE:  Thank you, Your Honor.   16:17:02

 3                MS. BREMNER:  All right.  So I just   16:17:02

 4    wanted to check and see if there were other      16:17:05

 5    options or what options we have, because I had    16:17:07

 6    said, I know, like, caught an instructional       16:17:10

 7    error in another court before, but I think        16:17:15

 8    this is the problem.  If we were to send a        16:17:16

 9    corrected -- or instruction, which I'm not        16:17:19

10    sure -- I think instructional error we're         16:17:22

11    looking at a mistrial, which I hate saying        16:17:25

12    again.                                            16:17:28

13                If we say we all agree to a new -- an  16:17:28

14    amended instruction with the definitions, the    16:17:33

15    problem I see is that I can't -- I never was      16:17:36

16    able to address that in closing arguments and    16:17:39

17    I think that would be a huge prejudice to the    16:17:42

18    defendant to have not been able to address --    16:17:44

19    to basically explain what that instruction       16:17:47

20    means.                                            16:17:50

21                And so if it had -- sorry.  Just a    16:17:51

22    second.  If it had -- the correct instruction    16:17:56

23    had been included, it's something that I could   16:17:59

24    have addressed in closing, but without it        16:18:01

25    there, there is no way to address that or to     16:18:03
```

36

| | | |
|---|---|---|
| 1 | apply the facts to it because it's not been | 16:18:07 |
| 2 | included in the packet and so I think it would | 16:18:09 |
| 3 | create a prejudice, so I don't believe we can | 16:18:11 |
| 4 | correct it with an amended instruction.  I | 16:18:14 |
| 5 | would object to it for that reason. | 16:18:17 |
| 6 | Because there isn't a way to correct | 16:18:19 |
| 7 | it, I think now we're looking at instructional | 16:18:20 |
| 8 | error and it would be a mistrial.  Of course, | 16:18:23 |
| 9 | though, I would ask that since they have | 16:18:26 |
| 10 | reached some sort of decision on any count | 16:18:27 |
| 11 | that that -- we get that before declaring a | 16:18:30 |
| 12 | mistrial.  That would be my request, Judge, if | 16:18:35 |
| 13 | that makes sense. | 16:18:40 |
| 14 | THE COURT:  What count is that? | 16:18:46 |
| 15 | MS. CASTLE:  III, the one with the | 16:18:48 |
| 16 | instruction issue? | 16:18:50 |
| 17 | THE COURT:  Uh-huh. | 16:18:51 |
| 18 | MS. CASTLE:  It's Instruction No. 21. | 16:18:52 |
| 19 | THE COURT:  What's the state's | 16:19:00 |
| 20 | response? | 16:19:02 |
| 21 | MS. CASTLE:  Your Honor, we had a | 16:19:02 |
| 22 | very lengthy instructions conference in which | 16:19:03 |
| 23 | we discussed all of the instructions to | 16:19:06 |
| 24 | include the definitions specifically as they | 16:19:10 |
| 25 | relate to Instruction No. 21. | 16:19:13 |

37

```
 1              Defense counsel indicated she --        16:19:16
 2    because those terms were defined in more than    16:19:20
 3    one instruction that she wanted a definitions    16:19:23
 4    page.  We came to a conclusion after            16:19:26
 5    significant discussion that we would put those   16:19:28
 6    definitions back in with each instruction, and  16:19:47
 7    there was no objection to those definitions.     16:19:49

 8              Defense counsel had plenty of notice   16:19:49
 9    to know that she would need to or could have     16:19:49
10    to address those specific definitions in the    16:19:49
11    instructions in her closing argument should     16:19:49
12    she have chosen to.  The fact that this page    16:19:51
13    as it relates to Count III was omitted was      16:19:52
14    only as a result of the question on the         16:19:55
15    definitions page versus on the page of the      16:19:57
16    instruction, not whether or not those           16:20:00
17    definitions should be included.                 16:20:03

18              The corrective action doesn't change  16:20:05
19    the page other than to include the page that    16:20:07
20    has simply the three terms that are defined in  16:20:10
21    murder 2nd.  All of the parties had notice of   16:20:13
22    that specific definition as it relates to       16:20:16
23    sudden passion for Darryl Singleton and it was  16:20:19
24    inadvertently omitted.  I don't think that      16:20:23
25    there was ever an objection to the language in  16:20:26
```

38

| | | |
|---|---|---|
| 1 | the murder in the second degree that's been | 16:20:28 |
| 2 | submitted to the court and was submitted in | 16:20:30 |
| 3 | the state's proposed instructions, state's | 16:20:33 |
| 4 | final instructions, defense counsel's | 16:20:35 |
| 5 | instructions. | 16:20:37 |
| 6 | MS. BREMNER:  I think I need a point | 16:20:38 |
| 7 | of clarification.  This instruction, the one | 16:20:39 |
| 8 | that's on this page? | 16:20:43 |
| 9 | MS. CASTLE:  That's Instruction 7. | 16:20:45 |
| 10 | Instruction 21 included when we had our | 16:20:47 |
| 11 | discussion had the definitions as they relate | 16:20:51 |
| 12 | when we did them with the mockers and there | 16:20:55 |
| 13 | was a conversation prior to that about having | 16:20:57 |
| 14 | a separate definitions page because your | 16:20:59 |
| 15 | instructions included a definitions page.  Our | 16:21:01 |
| 16 | instructions included the definitions on each | 16:21:04 |
| 17 | count.  That included sudden passion as it | 16:21:07 |
| 18 | relates to Count III because we've always | 16:21:09 |
| 19 | submitted murder in the second degree for both | 16:21:13 |
| 20 | Count I and Count III.  So we didn't agree to | 16:21:15 |
| 21 | not put the definitions in Count III.  You've | 16:21:20 |
| 22 | known all along that sudden passion and murder | 16:21:23 |
| 23 | in the second degree was being submitted. | 16:21:27 |
| 24 | There's no surprise.  We have -- that was | 16:21:29 |
| 25 | supposed to be in there. | 16:21:32 |

39

```
 1              Whether it was supposed to be          16:21:33

 2    included in a separate definitions page or as    16:21:34

 3    part of the instruction, you said that your      16:21:37

 4    issue was that you couldn't argue it in          16:21:40

 5    closing argument.                                16:21:42

 6              MS. BREMNER:  This instruction, this   16:21:43

 7    paragraph as used in this instruction sudden     16:21:45

 8    passion, you're saying this would be the exact   16:21:47

 9    instruction you would send back to the jury?     16:21:50

10              MS. CASTLE:  No.  I --                 16:21:52

11              MS. BREMNER:  That's my point.         16:21:52

12    Sorry.                                           16:21:53

13              MS. CASTLE:  No.  I would send back a  16:21:53

14    corrected instruction that was agreed upon by    16:21:55

15    both the parties that included sudden passion    16:21:57

16    as it relates to Darryl Singleton, which was     16:22:00

17    without objection in what was the proposed       16:22:03

18    instructions that was supposed to be in the      16:22:07

19    instruction.                                     16:22:09

20              MS. BREMNER:  Okay. But that's not     16:22:09

21    what we have and that's what I'm trying to       16:22:11

22    say.  That's not what we have and the            16:22:13

23    definitions page didn't have what you're         16:22:15

24    referring to, it only had this one, and so       16:22:18

25    because we don't have -- never had the           16:22:21
```

                                    40

| | | |
|---|---|---|
| 1 | definitions page with that and because the | 16:22:23 |
| 2 | final packet was agreed upon doesn't have it, | 16:22:25 |
| 3 | I never agreed to it because it didn't -- it | 16:22:28 |
| 4 | doesn't exist. It's not in the packet. So I | 16:22:31 |
| 5 | didn't agree to something that's not here. | 16:22:34 |
| 6 | I didn't ever agree to all of the | 16:22:36 |
| 7 | state's instructions; in fact, I submitted all | 16:22:38 |
| 8 | of my own verdict directors and had | 16:22:40 |
| 9 | objections. | 16:22:44 |
| 10 | This isn't -- wasn't included -- this | 16:22:44 |
| 11 | was, what we have was included, but what | 16:22:46 |
| 12 | they're submitting is a completely different | 16:22:49 |
| 13 | instruction. That is instructional error. | 16:22:51 |
| 14 | We can't go forward with amending the | 16:22:53 |
| 15 | instruction. We either have to leave it as is | 16:22:56 |
| 16 | and let them just figure it out, but I think | 16:23:01 |
| 17 | it's a problem because we didn't include it | 16:23:02 |
| 18 | and so I think we're looking at a mistrial at | 16:23:04 |
| 19 | least on Count III. | 16:23:07 |
| 20 | MS. CASTLE: What was your definition | 16:23:09 |
| 21 | of sudden passion under the murder in the | 16:23:11 |
| 22 | second degree for Darryl Singleton? | 16:23:15 |
| 23 | THE COURT: Let me jump in real | 16:23:16 |
| 24 | quick. Whether or not there was an agreement, | 16:23:19 |
| 25 | nonagreement, notice, non-notice, I think that | 16:23:20 |

41

| | |
|---|---|
| 1 | ship has sailed. We are looking at whether or | 16:23:25 |
| 2 | not we have error by way of instruction. And | 16:23:33 |
| 3 | really, it comes down to can it be corrected. | 16:23:43 |
| 4 | I think that's the crux of it. | 16:23:53 |
| 5 | MR. MESSONNIER: Can I speak? Plain | 16:23:59 |
| 6 | error requires us to look at the instructions | 16:24:01 |
| 7 | as a whole. And the term is defined elsewhere | 16:24:03 |
| 8 | in the instructions. The question now, are we | 16:24:12 |
| 9 | going to clarify to the jury that that | 16:24:14 |
| 10 | instruction applies to this instruction? | 16:24:14 |
| 11 | THE COURT: Well, I'm not taking | 16:24:16 |
| 12 | issue with what you said at all, and I'm | 16:24:18 |
| 13 | thinking out loud, if I can borrow that, Ms. | 16:24:20 |
| 14 | Bremner. Well, one of the issues, as I see | 16:24:38 |
| 15 | it, is, yes, it was defined somewhere. But if | 16:24:41 |
| 16 | the jury has a question now specifically to | 16:24:47 |
| 17 | this Count III, the fact that it was defined | 16:24:50 |
| 18 | somewhere else and if they came back with a | 16:24:52 |
| 19 | guilty on this particular count, can that | 16:24:55 |
| 20 | be -- can that error be corrected for the mere | 16:25:04 |
| 21 | fact that it was defined somewhere else on | 16:25:07 |
| 22 | another count? | 16:25:10 |
| 23 | MR. MESSONNIER: Quickly tell the | 16:25:11 |
| 24 | jury that that definition applies to this | 16:25:12 |
| 25 | count as well. I think a corrective | 16:25:14 |

42

|    |                                                    |          |
|----|----------------------------------------------------|----------|
| 1  | instruction would cure the error.                  | 16:25:17 |
| 2  | THE COURT:  What's the authority on                | 16:25:20 |
| 3  | that?                                               | 16:25:21 |
| 4  | MR. MESSONNIER:  I know I'd have to                | 16:25:25 |
| 5  | look at cases specifically.  I know there's        | 16:25:26 |
| 6  | cases where they've submitted an instruction       | 16:25:28 |
| 7  | correcting after deliberations has begun.  I       | 16:25:31 |
| 8  | don't know if this is responsive to the            | 16:25:34 |
| 9  | question, but when you notice the typo, fixing     | 16:25:35 |
| 10 | the typo.  There are cases on that.  If the        | 16:25:39 |
| 11 | court wants, I can quickly head downstairs and     | 16:25:44 |
| 12 | find some.                                          | 16:25:47 |
| 13 | THE COURT:  I don't know that you                 | 16:25:47 |
| 14 | need to do it quickly.  I know I need it.           | 16:25:48 |
| 15 | Mr. Smith, go ahead.                                | 16:25:51 |
| 16 | MS. CASTLE:  The instruction that the             | 16:25:56 |
| 17 | court sent that said the court's version of        | 16:25:57 |
| 18 | the instructions included the definition of        | 16:26:00 |
| 19 | sudden passion as it relates, and that was on      | 16:26:02 |
| 20 | Sunday night.  So I know that the question is      | 16:26:06 |
| 21 | whether or not necessarily -- not necessarily      | 16:26:10 |
| 22 | whether or not there's notice or whether or        | 16:26:12 |
| 23 | not -- I mean, but I guess, again, my point is     | 16:26:15 |
| 24 | that this term has been defined and.               | 16:26:18 |
| 25 | THE COURT:  Well, it's been defined               | 16:26:23 |

43

```
 1    at least to Count I, I know.  I think it was        16:26:25
 2    the intention to have it defined in Count III,      16:26:27
 3    but it wasn't.  And now they have a question        16:26:30
 4    about it and can we correct this.                   16:26:32

 5            I mean, I would like to think we can.       16:26:40
 6    I don't know that we can.  I don't know we          16:26:43
 7    can, I don't know that we can't, you know.          16:26:45
 8    Obviously, instructional error is the third         16:26:57
 9    rail.                                               16:27:03

10            Go up to the jury -- let me ask this.       16:27:06
11    It's 4:30.  They've usually been knocking off.      16:27:10
12    The fact that they sent down a question says        16:27:13
13    that they were willing to deliberate after I        16:27:16
14    sent them upstairs.  Does anybody have a            16:27:19
15    problem with Zach telling them that we're           16:27:21
16    trying to -- we're trying to resolve the            16:27:27
17    issue.  We're trying to resolve their               16:27:33
18    question.  We're trying to resolve their            16:27:35
19    questions, those words.  And in keeping with        16:27:37
20    their pattern of going home, we just ask them       16:27:44
21    to come back in the morning.                        16:27:46

22            MS. BREMNER:  Yeah.  That we're             16:27:49
23    trying to answer their question and if they         16:27:50
24    want to go home, that's fine.                       16:27:53

25            THE COURT:  We're trying to resolve         16:27:56
```

44

```
 1    their issue or resolve -- resolve their          16:27:57

 2    question.  I'm playing semantics here because    16:27:58

 3    I don't -- whatever words you want me to use.     16:28:01

 4           MR. SANKAR:  I think that's fine,          16:28:07

 5    Judge.  And I think that we can -- and I would    16:28:08

 6    almost propose, Judge, that we take a quick       16:28:10

 7    recess after explaining that to the jurors and   16:28:13

 8    then come back and address this issue because    16:28:15

 9    we might be able to go downstairs and provide    16:28:16

10    something to the court to address this issue.     16:28:19

11           THE COURT:  Well, and that's what I        16:28:20

12    am going to suggest and ask the parties to, I    16:28:22

13    mean, obviously get me something tonight so I    16:28:24

14    can look at it, and -- yeah, look at it and      16:28:28

15    read and you got to make a decision.              16:28:33

16           But first things first.  Does anybody      16:28:36

17    have a problem with what I just suggested by     16:28:38

18    way of asking Zach to go upstairs and ask them   16:28:41

19    to come back in the morning?                      16:28:46

20           MS. CASTLE:  Not by the state, Your        16:28:46

21    Honor.                                            16:28:51

22           THE COURT:  Ms. Bremner, Ms. Ellison?      16:28:51

23           MS. BREMNER:  No, Judge.  Oh, I'm          16:28:53

24    sorry.  You're just -- we're not bringing them   16:28:56

25    down, are we?                                     16:28:59
```

45

```
 1            THE COURT:  No.                   16:29:00

 2            MS. BREMNER:  No.  Yeah.  I don't  16:29:00

 3     have an objection.                        16:29:01

 4            THE COURT:  Tell them we're trying to  16:29:06

 5     resolve the issue and be safe and we'll see  16:29:07

 6     them in the morning.                      16:29:11

 7            THE CLERK:  9:00?                  16:29:11

 8            THE COURT:  That is -- I mean, 9:00,  16:29:19

 9     but if they want to pick a different time, if  16:29:21

10     that will make them happy, let them pick a  16:29:21

11     time.                                     16:29:23

12            THE CLERK:  Okay.                  16:29:23

13            THE COURT:  That being said, Counsel.  16:29:23

14            MS. BREMNER:  I just got notice that  16:29:28

15     this happened in another case with Judge Round  16:29:28

16     and it was just reversed with Keith Hudson.  16:29:33

17     They didn't define I think physical injury or  16:29:33

18     weapon, something along those lines, and it  16:29:36

19     was just reversed as instructional error.  16:29:38

20            THE COURT:  It's the third rail.  16:29:42

21            (Discussion held off the record.)  16:29:58

22            THE COURT:  Obviously, a starting  16:29:58

23     point because I need to -- I think that   16:29:59

24     might -- we can start there and maybe it's  16:30:02

25     distinguished because that's the only count  16:30:04
```

46

```
 1    and it starts --                               16:30:06

 2              MS. BREMNER:  I was trying to give a  16:30:09

 3    starting point.                                16:30:11

 4              THE COURT:  It starts the discussion. 16:30:11

 5    I need something -- what's the game plan?       16:30:15

 6              MR. SANKAR:  Judge, we think we       16:30:17

 7    can -- we obviously have access to computers,   16:30:19

 8    I think we can obviously speak tonight.  We'd   16:30:22

 9    like to speak tonight so we get some            16:30:25

10    resolution and know where we're going because   16:30:26

11    if we need to have a corrective instruction     16:30:29

12    for the instruction that was previously there,  16:30:30

13    we'd like to have that discussion sooner        16:30:33

14    rather than later.                              16:30:35

15              Obviously, we understand what the     16:30:36

16    court is directing us to do, which is, is       16:30:38

17    there a corrective measure based on where we    16:30:40

18    are now that can sustain appellate review       16:30:43

19    should they come to a verdict here.  That's     16:30:46

20    the question I think we're looking to answer.   16:30:48

21    It's not whether Mrs. Bremner was arguing       16:30:50

22    self-defense or talking about instructions.     16:30:53

23    So --                                           16:30:54

24              THE COURT:  So let me say this so I   16:30:56

25    can not surprise anyone.  I don't mind having   16:30:58
```

47

```
1    a discussion this evening, but in all fairness    16:31:00
2    to both sides, I don't know that I'm going to      16:31:10
3    make the decision tonight because I want to        16:31:12
4    look at whatever both sides are going to           16:31:15
5    present.  And I'm going to throw myself under      16:31:18
6    the bus for a second.  I don't know that I'm       16:31:24
7    smart enough to make that decision tonight.        16:31:26
8    So.  Or brave enough, to be honest with you.       16:31:29
9              MS. CASTLE:  Understood.                 16:31:33
10             MR. SANKAR:  Judge, would you like us     16:31:35
11   to meet earlier in the morning or should we do     16:31:36
12   what we did over the weekend and just converse     16:31:39
13   by e-mail?  Whatever is --                         16:31:42
14             THE COURT:  A little bit of both.  I     16:31:42
15   think we should do both.                           16:31:47
16             MR. SANKAR:  Okay.  Fair enough.          16:31:47
17             THE COURT:  Let's converse via           16:31:49
18   e-mails.  I have a hearing in the morning at       16:31:53
19   8:30.  I don't know if it's a plea or a            16:31:55
20   sentencing, but I need to be here in the           16:31:59
21   morning at 8:30.  What time are they coming        16:32:01
22   back?                                              16:32:07
23             THE CLERK:  9.                            16:32:09
24             THE COURT:  Is it a plea or a            16:32:11
25   sentencing?                                         16:32:13
```

48

```
 1              THE CLERK:  A sentencing.  Then we       16:32:13
 2    have a pretrial at 9:00 which could be            16:32:14
 3    lengthy.                                          16:32:18
 4              THE COURT:  And I'm saying this          16:32:24
 5    laughing at myself.  Did 8:00 present a           16:32:25
 6    problem for any of you all, because it did for    16:32:29
 7    me the other day.                                 16:32:31
 8              MS. CASTLE:  It does not for us, Your    16:32:32
 9    Honor.  We'll be here whenever you want us.       16:32:34
10              THE COURT:  How about defense?           16:32:37
11              MS. BREMNER:  Sure.                       16:32:38
12              THE COURT:  So I'll split the baby       16:32:41
13    and say 8:15.  All right.  Let's say 8:00.        16:32:45
14    I'm going to be here at 8:00.                     16:32:49
15              Here's my thinking.  If we converse     16:32:51
16    tonight via e-mail, that will give us some        16:32:53
17    chance to exchange what we need to exchange,      16:32:56
18    give me some time to read what both sides         16:32:58
19    present.  We'll meet here at 8:00 in the          16:33:01
20    morning, talk about it informally, and I guess    16:33:04
21    eventually go on the record, and we'll decide.    16:33:09
22    Anybody got a better mousetrap?                   16:33:18
23              MS. CASTLE:  No, Your Honor.  Thank      16:33:20
24    you.                                              16:33:23
25              MR. SANKAR:  Thank you, Judge.          16:33:23
```

49

```
 1              MS. BREMNER:  Mousetrap.  I don't      16:33:25
 2       know that I've said that.                     16:33:25
 3              THE COURT:  No, you've said it.         16:33:25
 4              MS. BREMNER:  Reggie also objects, by   16:33:30
 5       the way.                                       16:33:30
 6              THE COURT:  Understood.  All right.     16:33:32
 7              MR. SANKAR:  Thank you, Judge.          16:33:33
 8              (Court was adjourned.)                  16:33:37
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

50

```
 1                    REPORTER'S CERTIFICATE

 2

 3          I, Jessica Sanford, Certified Court

 4   Reporter, certify that I am the official court

 5   reporter for Division 18 of the Jackson County

 6   Circuit Court; that on 6/1/19, I was present and

 7   reported all of the proceedings in State of

 8   Missouri, Plaintiff, vs. Reginald Jones, Jr.,

 9   Defendant, Case No. 1716-CR05241-01.  I further

10   certify that the foregoing 51 pages contain a true

11   and accurate reproduction of the proceedings

12   transcribed.

13

14

15                    /S/ Jessica Sanford
                      Jessica Sanford, CCR 1379
16

17

18   Transcript completed: 6/19/19

19

20

21

22

23

24

25
```

# JURY QUESTION FORM

CASE NAME: *State of Missouri v. Reginald Jones Jr.*

CASE NO. 1716-CR05241-01     DATE: 6/12    TIME: 11 AM

QUESTION:

→ All 12

If the jury doesn't unanimously find the defendant guilty or not guilty, do we move onto the next instruction? If we don't all 12 agree on First Degree Murder, do we move onto the next instruction or do we all have to agree on one instruction before moving to the next instruction?

BY: _Mark Murphy_

**FOREPERSON**

COURT'S RESPONSE:

THE JURY SHALL BE GUIDED BY THE COURT'S INSTRUCTIONS

_11:30 AM_
**TIME**

_Kevin D. Harrell_
Kevin D. Harrell, JUDGE

**Court's Exhibit #**

# JURY QUESTION FORM

CASE NAME: *State of Missouri v. Reginald Jones Jr.*

CASE NO. 1716-CR05241-01            DATE:            TIME:____

QUESTION: If the Jury Cannot Unananimously Agree. On a proposition listed Under Instruction 19 how do we proceed?

BY: _____

**FOREPERSON**

COURT'S RESPONSE:

THE JURY SHALL BE GUIDED BY THE COURT'S INSTRUCTIONS

11:23 AM
**TIME**

Kevin D. Harrell, JUDGE

**Court's Exhibit #**

# JURY QUESTION FORM

CASE NAME: *State of Missouri v. Reginald Jones Jr.*

CASE NO. 1716-CR05241-01          DATE: 6-12-19      TIME: 11:10am

QUESTION:

If we all cannot agree on Instruction #27, can we move on to the next proposition.

If we cannot agree on Murder Count I Ron Darryl do we move on to the proposition.

BY: _____

**FOREPERSON**

COURT'S RESPONSE:

THE JURY SHALL BE GUIDED BY THE COURT'S INSTRUCTIONS

11:20 AM
**TIME**

Kevin D. Harrell  JUDGE

**Court's Exhibit #**

# JURY QUESTION FORM

**CASE NAME:** *State of Missouri v. Reginald Jones Jr.*

**CASE NO.** 1716-CR05241-01          **DATE:** 6/12          **TIME:** 1:40pm

**QUESTION:** Refering to Instruction 19, last sentence, does the word "you" refer to the individual juror or to the jury as a whole?

**BY:** _Mark Phipps_

**FOREPERSON**

**COURT'S RESPONSE:**

THE JURY SHALL BE GUIDED BY THE COURT'S INSTRUCTIONS.

1:59 PM

**TIME**

Kevin D. Harrell, JUDGE

**Court's Exhibit #**

# JURY QUESTION FORM

**CASE NAME:** *State of Missouri v. Reginald Jones Jr.*

**CASE NO.** 1716-CR05241-01 **DATE:** 6-12-19 **TIME:**_____

**QUESTION:**

THERE ARE JURORS THAT DO NOT WANT TO LOOK AT ALL OF THE POSSIBLE CHARGES OR FOLLOW THE INSTRUCTIONS. WE ARE AT A STAND STILL. PLEASE ADVISE.

**BY:** _[signature]_

**FOREPERSON**

**COURT'S RESPONSE:**

_____ _____

**TIME**

Kevin D. Harrell, JUDGE

**Court's Exhibit #**

# JURY QUESTION FORM

**CASE NAME:** *State of Missouri v. Reginald Jones Jr.*

**CASE NO.** 1716-CR05241-01          **DATE:** 6/12     **TIME:** 3:59

**QUESTION:**

Does the definition of "sudden passion" in instruction 21 have the same meaning as in "sudden passion" in instruction 7?

Please define the definition of "sudden passion" in regards to Instruction 21?

**BY:** _Mark Rhigly_

**FOREPERSON**

**COURT'S RESPONSE:**

SEE ATTACHED INSTRUCTION # 21 A

_9:30 AM 6-13-19_

**TIME**

Kevin D. Harrell, JUDGE

**Court's Exhibit #**

**IN THE CIRCUIT COURT OF MISSOURI**
**JACKSON COUNTY, SIXTEENTH JUDICIAL CIRCUIT**
2          **Honorable Kevin D. Harrell, Judge**

3   STATE OF MISSOURI,

4          Plaintiff,

5   vs.                              No. 1716-CR05241-01

6   REGINALD E. JONES, JR.,

7          Defendant.

8

9              **TRANSCRIPT OF PROCEEDINGS**

10     On Thursday, June 13, 2019, the above cause came on for

11   jury trial before the Honorable Kevin D. Harrell, Judge,

12   Division 18 of the Jackson County Circuit Court at Kansas

13   City, Missouri.

14

15                 **APPEARANCES**

16     The State of Missouri was represented by Sarah Ann

17   Castle, Lauren Alyssa Dollar and Dion F. Sankar, Jackson

18   County Prosecuting Attorney's Office, 415 E. 12th Street,

19   11th Floor, Kansas City, Missouri, 64106.

20     The defendant was present in person and represented by

21   his attorney, Ms. Paige Noel Bremner, Missouri State

22   Public Defender System, Oak Tower, 20th Floor, 324 E.

23   11th Street, Kansas City, Missouri, 64106.

24              Charla M. Milne-Cathcart, C.C.R. No. 560
                 Registered Professional Reporter
25        Sixteenth Judicial Circuit, Kansas City, Missouri

| | |
|---|---|
| 1 | **THURSDAY, JUNE 13, 2019** |
| 2 | (The following proceedings were held out |
| 3 | of the presence of the jury:) |
| 4 | THE COURT:  Everyone is here.  And I |
| 5 | will make my official apology to everyone on the |
| 6 | record.  Again, I set this for 8 o'clock and it's |
| 7 | not 8 o'clock.  I won't say on the record what |
| 8 | time it is, but it's not 8 o'clock. |
| 9 | All right.  This conversation is taking place |
| 10 | outside of our deliberating jury.  On last evening |
| 11 | we concluded to do some research as to our issue |
| 12 | of correcting -- whether or not we could correct |
| 13 | jury instructions based on a question presented by |
| 14 | the jury as to the definition of sudden passion as |
| 15 | it pertained to Count III of our instruction |
| 16 | packet. |
| 17 | I gave the State as well as the defense an |
| 18 | opportunity to do some research on that exchange, |
| 19 | both sides, and to let the Court read it.  I |
| 20 | believe that they have done that.  I know they've |
| 21 | done that, and we are back this morning. |
| 22 | State like to take a position? |
| 23 | MS. CASTLE:  Your Honor, as the State |
| 24 | mentioned in its memorandum on an omitted |
| 25 | definition, the law does permit the Court to |

```
 1            provide a definition.  Upon review of the question
 2            posed by the jury, it was clear and became clear
 3            to the Court and the parties that the entire
 4            definition section of murder in the second degree
 5            as it pertains to Instruction No. 21 had
 6            inadvertently been omitted.
 7                 The State did research last night and again
 8            provided the Court with two specific cases as well
 9            as a memorandum on what the Court has discretion
10            to do.  It is obviously within the Court's
11            discretion to make a determination.  I think
12            yesterday during the course of the proceedings the
13            defense on a number of occasions mentioned a
14            mistrial, and upon leaving last night had objected
15            to the corrective instruction.  And it was my
16            recollection of the evening that both defense
17            counsel and defendant had been requesting a
18            mistrial based on the omission of the definition.
19                 After receiving the State's memorandum, there
20            was an e-mail provided by defense counsel in which
21            she stated that she agreed with the State's
22            memorandum but did not agree with the request for
23            a mistrial on all counts.
24                 And I would like to clarify for the record
25            the State was not requesting a mistrial but
```

```
1          stating to the Court that given the appellate

2          issues and the issues that have been created by

3          the omission, it seemed as if that might be the

4          most corrective remedy because the jury had

5          indicated on a number of occasions it was

6          struggling to follow the instructions and then

7          that was ultimately how we had come to that

8          conclusion.

9               So I guess for us, we believe that it's the

10          Court's discretion, but there are some significant

11          appellate issues with regard -- potential

12          appellate issues with regard to the instructional

13          omission.

14                    THE COURT:  Ms. Bremner.

15                    MS. BREMNER:  Yes.  Thank you, Judge.

16          And I'll just make it clear and Mr. Jones can also

17          speak on his own behalf, but we -- in regards --

18          and I want to be specific because I did ask for a

19          mistrial in this case earlier.  But regarding --

20                    THE COURT:  When you say "earlier,"

21          earlier meaning yesterday evening or earlier in

22          the trial -- earlier in the trial?

23                    MS. BREMNER:  Last week in the trial.  I

24          never withdrew that mistrial request; I want that

25          to be clear on the record that it is preserved in
```

1              case we get to an appeal situation.

2                      THE COURT:  Understood.

3                      MS. BREMNER:  Regarding this

4              instruction, I did say the words many times, but I

5              was asked specifically if I requested a mistrial

6              while we were on the record, and I said I had not

7              requested a mistrial.  At the end when Judge -- I

8              think we were off the record at this point --

9              said, I don't know any other way out of this

10             mousetrap, I said mistrial?  And that -- but

11             Reggie would object to that request, so I never

12             made a formal request for mistrial on this issue.

13                 Additionally, I did not know the case law.

14             As the Court indicated, none of us were sure at

15             that point.  Went back to my office, found a case,

16             not the same case as they found but a case

17             similarly on point that said the correct thing for

18             the Court to do is to bring the jury down, provide

19             them the corrected instruction and send them back

20             to deliberate.

21                 The only thing I saw in the cases that the

22             State provided and the case that I found said that

23             a mistrial is appropriate if the defendant can

24             show prejudice and objected.  And in the cases,

25             some of them the defendant didn't object, some of

1          them the defendant didn't show prejudice.

2              I am not objecting to what the Court clearly

3          is supposed to do per the case law, which is

4          provide the required MAI.  That is what is

5          required.  Additionally, if the State is still

6          requesting a mistrial, even though we're

7          requesting the corrected instruction, I am

8          objecting to the mistrial request by the State on

9          this specific issue.  And the State requesting a

10         mistrial is a peculiar situation in that the

11         State -- and I did some research after the State's

12         request for a mistrial.  The State --

13             THE COURT:  I don't know, but don't lose

14         your thought.

15             Is the State requesting a mistrial?

16             MS. CASTLE:  No.  The State provided the

17         Court with possible remedies.  We did not request

18         a mistrial.

19             THE COURT:  I wasn't under the

20         impression that they were requesting one.

21             MS. BREMNER:  Well, then if we're all in

22         agreement to the instruction, the corrected

23         instruction, then --

24             THE COURT:  Let me make clear -- let me

25         be clear of something -- no, I am not saying that

```
 1          right.  Let me make sure that I am clear of
 2          something.  When we left here yesterday I was
 3          under the impression that defense was asking for a
 4          mistrial, but for wanting to make sure they were
 5          on solid ground, wanted to check some things.  But
 6          I was under the impression that just short of a
 7          few things you were asking for a mistrial.  So I
 8          guess unequivocally is the defense asking for a
 9          mistrial or not?
10              MS. BREMNER:  No, Judge, we are not.
11          And earlier -- I do remember I did make a mistrial
12          request earlier at the bench when we had -- but
13          before they came back with the question.  And
14          that's because I was under the impression they
15          were stuck and we were just sending them up to be
16          stuck again.  And, Judge, you were correct, I was
17          wrong.  They came down with a new question.
18          Clearly they're not stuck.  So that was the one, I
19          remember making that at the bench, but it was
20          specific prior to, and I was proven wrong, Judge.
21              THE COURT:  So they have been
22          deliberating since Monday.  And so today is
23          Thursday.  Is it -- so am I correct in my
24          thinking, Ms. Bremner, that you are making the
25          strategic decision not to ask for a mistrial even
```

1         in understanding that they have been deliberating

2         since Monday?  I mean, I am saying I was under the

3         impression --

4              MS. BREMNER:  Sorry.  I am not sure.  I

5         guess I am not sure what you're asking, Judge.

6              THE COURT:  What I am saying is, if you

7         were inclined to ask for a mistrial, you were

8         inclined to ask for a mistrial, I would be

9         inclined to entertain that seriously at this

10        point.  So if you are not asking for a mistrial,

11        because I was under the impression when we left

12        yesterday that you were going to ask for that.

13        And that's fine, I'm not pushing you in that

14        direction, but I am saying you're not asking for

15        one and so you're making the conscious decision

16        not to ask for one at this point is what I'm

17        asking.

18             MS. BREMNER:  Right, Judge.  I believe

19        the instruction is what the law dictates as the

20        corrective measure unless I can show prejudice,

21        which I reviewed my own statements in closing and

22        talked with co-counsel about what I said, and I

23        don't believe I have a good faith argument that

24        there was prejudice.

25             THE COURT:  And I'm glad you said that

```
 1            because -- and you just addressed it, because
 2            yesterday, and, again, this was before you had a
 3            chance to check, you did mention that you believe
 4            you were prejudiced because you didn't get a
 5            chance to speak to that.  And, again, you said
 6            that prior to the recess we took last night.
 7            Okay.
 8                 That being said, and, again, I will just say
 9            if you were asking for a mistrial I would be
10            inclined to entertain that seriously, but it's my
11            understanding that you are not requesting one at
12            this time.
13                      MS. BREMNER:  Just one second.
14                      (Counsel confer momentarily.)
15                      MS. BREMNER:  We're not asking, Judge,
16            for a mistrial on this issue.
17                      THE COURT:  Understood.  And you are not
18            waiving any other previous request.
19                      MS. CASTLE:  Judge, just for purposes of
20            the record, would the Court mind reading the
21            e-mail from defense counsel into the record that
22            was received last night at 9:59 p.m. by both
23            parties as well as the Court?  I can read it if
24            you would like.
25                      THE COURT:  You may.
```

1        MS. CASTLE:  "I concur with the State's
2        memo but not with their request for a mistrial on
3        all counts.  It is clear that the Court has to
4        read and provide the correct instruction to the
5        jury.  That would be the defendant's request.
6        After court I reviewed the MAI, and based on what
7        I remember from my closing, I did address the
8        specific instruction, and I do not believe I can
9        show any prejudice to the defendant.  Since I
10       cannot show prejudice and I am not objecting to
11       the instruction being corrected, a mistrial on
12       this issue would be wrong.  Thank you."
13          And that was received on 6/12/2019 at 9:59
14       p.m. by the Court and all the parties.
15          THE COURT:  All right.  Since you read
16       that into the record why don't you print it off so
17       we can make it a part of the record.
18          So that being said, I think the vein that we
19       are in is we should prepare the corrected
20       instruction with the definition included.  It
21       would be my intent, unless again the collective
22       heads tell me we should do something differently,
23       is to actually bring them down, read that
24       instruction to them, just that instruction, send
25       them back upstairs to deliberate; that instruction

```
 1          including obviously that the definitions, and,
 2          again, just send them back up and then they will
 3          continue their deliberations.
 4              Any objection to that?
 5                  MS. CASTLE:  No, your Honor.
 6                  MS. BREMNER:  No.  That seems to be what
 7          the case law suggests.
 8                  THE COURT:  Now, the basis for which I
 9          would do that comes from the research provided to
10          the Court, and that is State v. Gardner,
11          G-A-R-D-N-E-R.  That's found at 8 S.W.3d 66, as
12          well as State v. Hannett, H-A-N-N-E-T-T, and
13          that's 713 S.W.2d. 267.  And that's the authority
14          of which I will base my decision and proceed with
15          submitting the corrected instruction in this
16          matter.
17                  MS. CASTLE:  Your Honor, instruction I
18          believe is No. 33 also references that they are to
19          refer to each instruction separately.  And since
20          they were trying to apply the definition of
21          Instruction No. 7 to Instruction No. 21, I know we
22          are giving them the corrective instruction, but
23          would the Court entertain reading Instruction No.
24          33, which says they have to consider each
25          instruction separately, since there was some
```

```
 1              confusion about applying definitions from one

 2              count to another?

 3                        MS. BREMNER:  Judge, I would object to

 4              that mostly because they asked the question and we

 5              are to answer that question that they asked, and I

 6              believe that's what we're doing with this.  I

 7              don't think we should go beyond that.

 8                        MS. CASTLE:  The question was

 9              specifically whether or not the definition of

10              sudden passion as in Instruction 7 could be

11              applied to Instruction 21.  That's taking

12              something from one instruction and applying it to

13              another.  We're correcting it by giving them the

14              definition, but to tell them that they are not to

15              go and consider a definition in another

16              instruction to me --

17                        THE COURT:  Well, I understand the

18              State's argument and position, but I think we need

19              to answer the question by providing the definition

20              and not go beyond.  I mean, because we're sending

21              them back up there to deliberate, I think they're

22              purposely going through the instruction and

23              hopefully they will land on each and every

24              instruction that they need to land on.

25                        Again, so my intention is to bring them down,
```

```
 1          tell them that -- read the question that they
 2          posed, then read the corrected instruction and
 3          then send them back.  All right.  Once I have the
 4          corrected instruction -- now that I have the
 5          corrected instruction, I am going to bring them
 6          down.  I am going to take up some other matters
 7          and then we'll call you when we're ready.
 8                    MS. BREMNER:  We probably need to look
 9          at it.
10                    MS. CASTLE:  And, your Honor, I have one
11          other thing I need to take up.
12                    THE COURT:  You may.
13                    MS. CASTLE:  Last night the Court
14          concluded with the jury and released them and
15          released all of the parties.  Most of the State's
16          attorneys used the stairs.  I used the elevators.
17          And there were three jurors.  One of the jurors
18          approached me and stated in the hallway, I have a
19          question for you, to which I said, I am not
20          allowed to talk to you.  And one of the jurors
21          said, You can't talk to her.
22             The juror continued with, It's not about the
23          trial.  And I said, I am not allowed to answer
24          anything.  And she proceeded to ask me how I get
25          out of the building in the event of a fire drill.
```

```
 1              And my response was, I don't.  But I got in the
 2         elevator and got down on 7M and left the elevator
 3         and said good night.
 4              Nothing else was discussed, but it was in
 5         front of a couple of jurors in the open hallway on
 6         the 8th floor.  And I want to make sure that the
 7         Court is aware that I was asked to answer a
 8         question.
 9                   THE COURT:  Ms. Bremner.
10                   MS. BREMNER:  I don't have a response.
11                   THE COURT:  Do we need to follow up by
12         way of bringing any one of those three individuals
13         in and ask any questions?
14                   MS. BREMNER:  I don't think it's
15         necessary.
16                   THE COURT:  I am just making sure.  As
17         an officer of the Court, Ms. Castle, I will take
18         your recitation as that of the truth and it won't
19         be an issue.
20                   MS. CASTLE:  Thank you, your Honor.
21                   THE COURT:  All right.  We will take it
22         up as soon as they buzz, and I can take care of a
23         couple of other matters, all right?
24              Counsel, do me a favor, put your heads
25         together, amongst yourselves if you need to, and
```

1          then if there is something that comes up we'll

2          deal with it.

3                    MS. BREMNER:  I think it's all the same

4          typos we had last time.

5                    (A recess was taken.)

6                    THE COURT:  Counsel, question.  And

7          actually I think you have answered my question,

8          but just to make sure that I am looking at this

9          correctly.  The corrected instruction that I've

10         been given, are we numbering that 21-A?

11                   MS. DOLLAR:  Yes, your Honor.

12                   THE COURT:  And, again, it is my

13         intention to read their question, and in response

14         to their question read the corrective instruction.

15                   MS. DOLLAR:  Your Honor, I think we

16         should include language saying that 21-A will be

17         replacing Instruction 21 so that they don't think

18         that they are supposed to --

19                   THE COURT:  We will be replacing 21.  So

20         should I have Mr. Smith pull Instruction 21 out of

21         the original packet?

22                   MS. BREMNER:  I think so.

23                   THE COURT:  As well as they have

24         courtesy copies.  So what we will do is we'll make

25         a copy of 21-A, tell them to discard it.  We will

1          make sure they discard all of the original 21's.

2                    (The following proceedings were held in

3          the courtroom in the presence of the jury:)

4                    THE COURT:  Good morning, everyone.  I'm

5          glad to see you made it back safely this morning.

6          I hope you had a good night's rest.

7               Ladies and gentlemen, you submitted a

8          question last night before we took a break, and it

9          is the Court's intention at this time to address

10         that question.  All right?  Your question was:

11         "Does the definition of sudden passion in

12         Instruction 21 have the same meaning as in sudden

13         passion in Instruction 7?  Please define the

14         definition of sudden passion in regards to

15         Instruction 21."

16              This is Instruction 21-A.  Instruction 21-A.

17         "As to Count III, if you do not find the Defendant

18         guilty of murder in the first degree you must

19         consider whether he is guilty of murder in the

20         second degree under this instruction.  As to Count

21         III, if you find and believe from the evidence

22         beyond a reasonable doubt; first, that on or about

23         December 7, 2017, in the state of Missouri the

24         Defendant caused the death of Darryl Singleton by

25         shooting him; and second, that it was the

16

```
1           Defendant's purpose to cause serious physical

2           injury to or cause the death of Darryl Singleton;

3           and third, that Defendant did not do so under the

4           influence of sudden passion arising from adequate

5           cause; and fourth, that Defendant did not act in

6           lawful self-defense as submitted in Instruction

7           No. 27; and fifth, that Defendant did not act in

8           lawful defense of another person as submitted in

9           Instruction No. 28, then you will find the

10          Defendant guilty under Count III of murder in the

11          second degree.  However, unless you find and

12          believe from the evidence beyond a reasonable

13          doubt each and all of these propositions, you must

14          find the Defendant not guilty of murder in the

15          second degree under this instruction.  As used in

16          this instruction, the term sudden passion means

17          passion directly caused by and arising out of

18          provocation by Darryl Singleton or another acting

19          with Darryl Singleton which passion arose at the

20          time of the offense and was not solely the result

21          of former provocation.  The term adequate cause

22          means cause that would reasonably produce a degree

23          of passion in a person of ordinary temperament

24          sufficient to substantially impair an ordinary

25          person's capacity for self-control.  As used in
```

1           this instruction the term serious physical injury

2           means physical injury that creates a substantial

3           risk of death or that causes serious disfigurement

4           or protracted loss or impairment of the function

5           of any part of the body."

6               Ladies and gentlemen, this is Instruction

7           21-A.  In your original packet as well as your

8           copies there is instruction 21.  I am going to ask

9           Mr. Smith to take Instruction 21 out of the

10          original packet as well as your copies and replace

11          it with 21-A, all right?  So 21 will be taken out

12          of the original as well as the copies and replaced

13          with 21-A.  And as a part of answering your

14          question, as I do, I am going to put in the

15          Court's response "See attached 21-A."

16              All right, ladies and gentlemen, you may

17          return upstairs for your deliberations.  Thank you

18          very much.

19                  (The jury left to continue deliberations

20          at 9:31 a.m.)

21                  (A recess was taken.)

22              THE COURT:  This is in the matter of

23          State of Missouri v. Reginald Jones, Jr.

24          Conversations are taking place outside of our

25          deliberating jury.  We have two questions.  First

```
 1         question:  "Can the jury change the foreperson?"

 2                  MS. CASTLE:  I don't think that we can

 3         comment on that.

 4                  MS. BREMNER:  There is an instruction,

 5         so I think they have to follow the instructions of

 6         the Court.

 7                  THE COURT:  What's my response?

 8                  MR. SANKAR:  I think -- honestly, Judge,

 9         I think that that goes to the internal

10         deliberations of the jury.  With respect to just

11         answering the questions, I think it's up to them

12         to -- I think as you instruct them, to maneuver

13         through their deliberations as they see fit.  I

14         don't know how to capture that in a short

15         sentence, but --

16                  THE COURT:  Ms. Castle?

17                  MS. CASTLE:  No, you're fine, Judge.

18         You're fine.

19                  THE COURT:  So someone tell me what my

20         response is.

21                  MS. BREMNER:  I think since there is an

22         instruction on foreperson that the comments should

23         be what the standard answer.

24                  THE COURT:  The jury shall be guided --

25         go ahead.
```

1          MR. SANKAR:  Ms. Dollar just made a

2     suggestion.

3          MS. DOLLAR:  The jury should be guided

4     as they see fit, or proceed as they see fit.

5          MS. BREMNER:  I think it needs to be,

6     because there is an instruction on it, they need

7     to follow the instruction.

8          MS. DOLLAR:  I'm just not sure if the

9     instruction encompasses them wanting to change the

10    foreperson.  It just says selecting a foreperson,

11    so that would be my only suggestion.

12         THE COURT:  Okay.  So --

13         MS. CASTLE:  Were the questions

14    submitted at the same time?

15         THE COURT:  Yes.

16         MS. CASTLE:  And this is just procedure.

17    The second question is maybe easier to answer.

18         THE COURT:  That's fine.  So I have --

19    well, let me read the second question and I will

20    tell you all the issues.  Second question:  "There

21    are jurors that do not want to follow the

22    instructions and some claim that" should be they,

23    but "some claim that the (sic) do not understand

24    the instructions.  We are at a standstill and

25    cannot go forward.  There is no understanding of

```
 1          the order of deciding the counts.  Please advise."

 2              Before we deal with that.  Mr. Smith, my law

 3          clerk/lawyer/bailiff and extraordinaire --

 4              THE LAW CLERK:  Zach of all trades.

 5              THE COURT:  -- Zach of all trades, has

 6          sent me a message saying, "During the swapping of

 7          instructions a juror approached me in private

 8          about an issue with another juror.  She asked what

 9          she should do if she and other jurors were having

10          a problem with a particular juror.  I said I would

11          bring it to the Court's attention."

12              MS. CASTLE:  Based on the State's

13          understanding of the second question, and I would

14          take the question regarding standstill to be maybe

15          the first and the question that was posed to

16          Mr. Smith as well as can we change the foreperson

17          to indicate that they are at a deadlock.  And

18          based on their statement that they cannot move

19          forward, that's what I understand them to be

20          saying.  And I think that takes sort of into

21          account what has been stated previously.

22              So that's the State's position on how -- what

23          at least we have interpreted the question to be.

24              THE COURT:  Ms. Bremner.

25              MS. BREMNER:  Oh, so many things.  Well,
```

1          originally when, in response to the second

2          question that was read, what I was thinking was

3          something along the lines of reminding them that

4          they are bound to follow the instructions of the

5          Court that have been provided, and if you have a

6          question about the instructions, to address that

7          to the Court.

8               At the standstill thing, and they said they

9          cannot go forward, I know that yesterday I made

10         this request, and I would make the same request

11         again, to find out if they still have a decision

12         on any count or counts, and to ask them -- I don't

13         know the correct language to return verdicts on

14         any count or counts that they can return verdicts

15         on.  But before that, asking if -- I mean, we

16         asked them yesterday when they said they were at a

17         standstill, and they said they could and they did

18         and they came back with another question.

19              I thought yesterday when they said at a

20         standstill they meant it, but then they continued.

21         Now they're saying again they're at a standstill,

22         so --

23              THE COURT:  So let me deal with the

24         first question of -- the first sentence rather of

25         this question.  "There are jurors that do not want

```
1          to follow the instructions and some claim they do
2          not understand the instructions."

3               More concerning of that, more so than the
4          understanding is they don't want to follow the
5          instructions because you can get an understanding
6          just talking and reading.  But if you don't want
7          to follow them, that's something different.

8               MS. BREMNER:  Sure, which is why
9          originally I suggested maybe a reminder.  And I
10         know like with yesterday I thought -- basically
11         they have proven me wrong is what I am trying to
12         say.

13              And so I don't know if maybe, you know,
14         bringing them down, and even though they said they
15         were at a standstill, and bringing them down and
16         talking to them, they said they still could go
17         forward.  So I am just saying maybe something
18         about that they -- when they were sworn in to
19         follow the instructions, that maybe a reminder
20         from the Court that they need to follow the
21         instructions of the Court as they have been
22         provided, and then a follow-up with that
23         instruction, you know, would more time help?  And
24         if they are like, no, then have they reached, you
25         know, a verdict, can they fill out verdict forms
```

```
 1          for any count or counts.
 2                 THE COURT:  What's the thinking if --
 3          let's just say yes, we can fill out verdict forms
 4          as to certain counts.  No, we can't go any
 5          further, we're deadlocked, what's the thinking?
 6                 MS. BREMNER:  I think those are two
 7          separate things, Judge.
 8                 THE COURT:  Yeah, I'm just playing it
 9          out in my head, what's the thought process?  Yes,
10          we can fill out some counts and no, we can't
11          deliberate anymore because we're tired of each
12          other and we're not going to follow the
13          instructions.
14                 MS. BREMNER:  Then they should return
15          verdict forms for whatever count they can agree
16          on, and then declare a mistrial on whatever count
17          they cannot agree on.
18                 THE COURT:  What's the State's position?
19                 MS. CASTLE:  If the Court is inclined to
20          declare a mistrial, it should be of the entire
21          trial.  Their question specifically states that
22          they are not following, or not willing to follow
23          instructions as to decisions on the counts.  Their
24          questions have been posed intertwining all of the
25          counts, and everything has been completely
```

24

```
 1            intertwined.  The Court does not have to accept a
 2            verdict.  If the Court is inclined to declare a
 3            mistrial because they're not following
 4            instructions, we don't know which instructions
 5            they've chosen to follow or not follow.  It should
 6            be of the entire trial.
 7                      THE COURT:  Okay.  Go ahead.
 8                      MS. BREMNER:  I think it was very clear
 9            yesterday and -- I am losing track of days.  I
10            think it was very clear Tuesday in their last
11            question, and theirs yesterday, one, from all of
12            their questions and, two, from what they said on
13            the record in front of everyone, that they have
14            reached verdicts as to -- verdict.  I don't know.
15            I don't want to -- but they have received an
16            agreement.  And if they've reached an agreement we
17            can't just throw that aside.  If they have reached
18            an agreement on to any of the counts, we should --
19            I mean, I think there is a double jeopardy claim
20            here, Judge.
21                      THE COURT:  Well, hypothetically they
22            can agree that there was a crime committed by way
23            of -- a shooting was committed by, with and
24            through the use of a gun, but they don't agree
25            whether or not it was first degree, second degree,
```

25

```
 1          voluntary or involuntary.  So we all agree it was

 2          used by a gun.  So they agree that, yes, this was

 3          an ACA.  But you don't get to the ACA unless you

 4          find the prerequisite.

 5               MS. BREMNER:  But that's a completely

 6          different situation.  If they say that they have

 7          agreed on a count and that's the situation we're

 8          in, then that would be an inconsistent verdict and

 9          we couldn't be able to accept it.

10               THE COURT:  Right, but I'm saying I

11          wouldn't know that -- you're saying call them

12          down, figure out which ones --

13               MS. BREMNER:  No, I'm not saying we

14          should find out which ones.  I'm saying you should

15          call them down and ask them if they've reached --

16          if they can agree as to any count or counts; if

17          they can, to return verdict forms for those counts

18          or count.  And then just as the Court would do in

19          any trial, review them to make sure they're

20          accurate.  If they're not, then obviously we

21          cannot accept them; they're not in proper form.

22          But if they're in proper form, I leave the Court,

23          you need to accept them.  Otherwise we have a

24          double jeopardy claim.

25               THE COURT:  I got you.
```

```
 1              MS. CASTLE:  Judge, if I may, there is
 2         case law on point that says the Court cannot have
 3         to accept a verdict and can order a mistrial on
 4         the entirety of the situation.
 5              THE COURT:  I understand, it's my
 6         discretion.  I get it.  So at this point I need to
 7         bring them down and ask them -- I am going to deal
 8         more so with what I am calling the second one
 9         about following the instructions.  And I am not
10         even dealing with the change of the foreperson.
11           So I am calling them down to ask them, A,
12         still if they have at least the count that they
13         have agreed upon and if further deliberations will
14         help, and if they are still willing to follow the
15         Court's instructions.  If that doesn't incorporate
16         or contemplate understanding is a concern.
17              MS. BREMNER:  There is also an
18         instruction that tells them to --
19              THE COURT:  But I can't point to it.
20              MS. BREMNER:  Well, maybe the addition
21         of following the instructions of the Court that
22         has been provided, I mean -- maybe that's the
23         hammer, I don't know.
24              THE COURT:  They don't understand the
25         order of which they must decide.  So, I mean, if I
```

```
 1            bring them down, I'm asking them, Do you still

 2            have a count that you can agree upon; will further

 3            deliberations help; and are you still willing to

 4            follow the Court's instructions?  Those are the

 5            three questions that I said.

 6                     MS. CASTLE:  Thank you.

 7                     (The following proceedings were held in

 8            the presence of the jury at 10:31 a.m.)

 9                     THE COURT:  I want to start off by

10            saying again, as I said yesterday, we thank you.

11            We know you have put in a lot of work.  I think I

12            should tell you that none of these issues are

13            unique to this group.  All right?  So I need to

14            say that to you.  This is not unique to this

15            group.  So all right, Mr. Foreman.

16                     JURY FOREMAN:  Yes, your Honor.

17                     THE COURT:  Again, without telling me

18            any specifics, as of right now, again, without any

19            specifics, does the jury still have an agreement

20            at least to one of the counts?

21                     JURY FOREMAN:  Yes, your Honor.

22                     THE COURT:  Do you believe at this point

23            that further deliberations will be helpful to the

24            jury?

25                     JURY FOREMAN:  No, your Honor.
```

1                    THE COURT:  Do you believe that you as a

         2          collective are willing to follow the Court's

         3          instructions?

         4                    JURY FOREMAN:  No, your Honor.

         5                    THE COURT:  Are you pretty certain about

         6          that, sir?

         7                    JURY FOREMAN:  Absolutely, your Honor.

         8                    THE COURT:  Counsel, approach.

         9                    (Counsel approached the bench and the

        10          following proceedings were held:)

        11                    MS. CASTLE:  They made it very clear

        12          they are not willing to follow the instructions

        13          and that they can't deliberate any further, so, I

        14          mean, that seems very clear.

        15                    THE COURT:  Ms. Bremner.

        16                    MS. BREMNER:  I would agree; however,

        17          just like they said the day before and they have

        18          said again today that they have reached an

        19          agreement, and they reached that agreement before

        20          they talked about not being able to follow the

        21          instructions.  They said that yesterday and they

        22          said that today.  I believe that asking them to

        23          return a verdict or verdicts on the counts that

        24          they agreed to is proper.  This issue of not being

        25          able to follow the instructions didn't come up

```
 1           until today.
 2                THE COURT:  Okay.  I am going to send
 3           them back upstairs.  It's up to me to make a
 4           decision.  I am going to send them back upstairs,
 5           all right?  Any comments?
 6                MS. BREMNER:  No.
 7                (The proceedings returned to open
 8           court.)
 9                THE COURT:  All right, ladies and
10           gentlemen.  I am going to send you back upstairs.
11             All rise.
12                (The jury left to continue deliberations
13           at 10:37 a.m.)
14                THE COURT:  All right.  Would the State
15           like to supplement the record any further before I
16           make my decision?
17                MS. CASTLE:  Your Honor, I mean, it is
18           the Court's discretion obviously, but based on the
19           answers that were just provided, it seems clear
20           that the jury is not willing to follow the
21           instructions, and we can't make any determination
22           as to which instructions they are or are not
23           willing to follow.  They are told to follow the
24           instructions as a whole, and as stated, I believe
25           the foreperson's statement was absolutely they
```

1          could not follow the instructions.

2                   THE COURT:  Ms. Bremner.

3                   MS. BREMNER:  Two parts:  One, just when

4          the foreperson was saying absolutely they could

5          not follow the instructions, some of the jurors

6          were shaking their heads in a no.  So I am not

7          sure if there is disagreement on that.

8               The other part is, I understand -- I think I

9          understand what you're asking me.  And I am still

10         requesting that the Court ask them to return

11         verdicts on the counts they do agree on.  I think

12         based on -- I think it's pretty clear from the

13         record and from the last few days of deliberations

14         that the jury didn't have any problems until they

15         came to Count III.  And I believe that it is based

16         on the fact that the State also wants a mistrial

17         that it's clear their concern is that they have

18         reached a not guilty verdict on some counts,

19         specifically Count I.  And to declare a mistrial

20         on all the counts creates a double jeopardy issue

21         when there is a possibility or belief that the

22         jury is coming back on a not guilty on any of the

23         counts.  And if that is correct that they are, and

24         based on the questions that they have submitted

25         throughout the last three days of deliberations,

```
 1          it's easy to infer that.

 2              And with the State's request, if the Court is

 3          going to grant a mistrial on all four counts, I

 4          would ask that jeopardy -- or that I would object.

 5          First of all, I would object, and that the

 6          mistrial -- I am trying to find the right

 7          language, Judge.  Sorry.  Give me a second.

 8                  THE COURT:  Take your time.

 9                  MS. BREMNER:  That prejudice -- that it

10          be a mistrial with prejudice.  I think based on

11          the questions that we have received from the --

12          not the first question the first day.  The first

13          question I believe was just for exhibits and then

14          about stand your ground.  But the last question on

15          the first day on Tuesday where they asked

16          specifically about whether or not the self-defense

17          evidence on Count I also applied to Count III,

18          it's very clear where they had already moved to

19          and what was happening that they had already found

20          self-defense.  And obviously this is me inferring,

21          but I think based on their continuing questions

22          the issue of not being able to follow the

23          instructions is being based now on when they moved

24          on to Count III and the counts involving Mr.

25          Darryl Singleton, not the counts involving
```

1          Reginald Jones, Sr.

2                And based on the questions that they have

3          asked through the pendency of their deliberations

4          and the -- I think it's clear that they also

5          believe, this is why they also are agreeing with a

6          mistrial from the questions that it can be

7          inferred that this is what they're looking at as

8          an acquittal.  And we are objecting to this

9          mistrial as they can return verdicts, they told us

10         they could return verdicts yesterday before they

11         said they couldn't follow the instructions.

12               We would ask that they return verdicts on the

13         counts that they're in agreement on.  They've been

14         in agreement on those verdicts for some time.

15         They didn't have any issues until they moved on to

16         the next count.  And so I think it's clear, I

17         think it's fair to infer that everyone knows what

18         the jury has reached verdicts on.  And so

19         declaring a mistrial on all counts and going

20         forward with a new trial on all counts would be a

21         violation and double jeopardy on whatever counts

22         that they would be acquitting him on, and that

23         this violates my client's rights -- I need to

24         constitutionalize it, Judge -- violates my

25         client's rights under Article I, Section 10, 18(a)

1        and 19 of the Missouri Constitution, and under the

2        U.S. Constitution, Amendments 5, 6 and 14.

3            If the Court is going to declare a mistrial

4        on all counts, again, I would ask that this be

5        done with prejudice.  That's it.  Thank you.

6            THE COURT:  All right.  Given the

7        situation, having been told by the jurors that

8        they are not going to follow the Court's

9        instructions and that further deliberations would

10       not be helpful, put in the situation to declare a

11       mistrial.  I am doing so at 10:40, 10:42, 43.

12           While we're dealing with this issue as it

13       pertains to the instructions, came up with the

14       instructions, there was still a request for a

15       mistrial early on that defense has not waived.

16       And so that having not been waived, there was a

17       request earlier for a mistrial altogether, taken

18       in part with now the fact that they can't follow

19       the -- can't and won't follow the instructions, I

20       am going to mistrial the while case without

21       prejudice.

22           I am going to set this for trial again.

23       What's the schedule?

24           MS. BREMNER:  I don't have my calendar

25       for next year, Judge.

```
 1                    MS. CASTLE:  The State could be prepared
 2          Monday.  We checked all the trial calendars, and
 3          it didn't appear that there were any conflicts
 4          other than we don't know if the Court had
 5          anything.
 6                    MS. BREMNER:  I do have my calendar for
 7          this year, Judge.  But I understand the State
 8          saying that they are ready on Monday.  I have an
 9          expert who I don't know his schedule regarding
10          sentencing.  He has been here all week waiting on
11          sentencing, and I don't know his schedule.
12                 Additionally, all of the witnesses, the lay
13          witnesses especially have been released from their
14          subpoenas, which means we have nobody served for
15          trial.  There is no way we can go forward on
16          Monday.
17                    MS. CASTLE:  I am confident that we can
18          get the State's witnesses under subpoena and
19          proceed.
20                    THE COURT:  Ms. Bremner, tell me about
21          your expert.  What were you saying about the
22          availability?
23                    MS. BREMNER:  I don't know his
24          availability.  He is here.  I can find out, if you
25          give me some time.
```

```
 1                    THE COURT:  You can get some time.  I
 2            guess what I am saying is, the case was just
 3            tried.  Again, I've said this before:  Mr. Jones
 4            has been in custody for awhile.  I don't want to
 5            take a long time trying this case, and so I am
 6            trying to figure out why we can't try it next
 7            week.  And right now it's the State's burden to
 8            produce those witnesses, so I am putting the onus
 9            on them to get the witnesses.
10                    MS. BREMNER:  Judge, I understand -- I
11            understand that's their burden.  I subpoenaed
12            witnesses as well because I didn't know if the
13            State would call them because they were helpful to
14            our case as well.  And so I don't know what their
15            plans are after hearing all the evidence; I don't
16            know what they're going to do.  I need to have
17            those witnesses under subpoena as well.
18                    THE COURT:  And I am not going to
19            prejudice you with respect to that.  I am not
20            going to prejudice you with respect to defending
21            your case.
22                    MS. BREMNER:  Okay.
23                    THE COURT:  I'm saying you will have who
24            you need to have.
25                    MS. BREMNER:  Okay.  Then if I can
```

```
 1          further explain my availability.  I am -- this
 2          case was set originally in, was it April?
 3                    MS. CASTLE:  It was originally set in
 4          January.  It was continued to April 15, and then
 5          set for this week -- or last week.
 6                    MS. BREMNER:  So I just need to make a
 7          record.  I entered on this case in October after
 8          Mr. Bailey left our office.  I have literally
 9          maybe seen Reginald Jones, Jr. a handful of
10          months, like I have had a very short time with
11          this case.  So excuse me that I asked for a
12          continuance from the original trial setting in
13          January.  And I'm sorry that I asked for another
14          one in April, but they were all valid continuance
15          requests.
16               Since that last continuance in April, I have
17          worked only on Reginald Jones, Jr.'s case.  I have
18          a lot of other clients with pending cases, and
19          they have literally not seen me in months.  I am
20          honestly concerned about OCDC and I have concerns
21          this morning I thought about when the State
22          requested a mistrial needing to call them and find
23          out what I am supposed to do in regards to all my
24          other cases that I have literally had to put on
25          the back burner to prepare this case for trial.
```

```
 1              Because I understood that the Court was not
 2         inclined to give me another continuance, so I at
 3         the last continuance literally ignored every case
 4         I had.  I cannot continue to ignore every case I
 5         have.  I have to see clients, I have to be
 6         prepared for their upcoming trials.  So
 7         potentially being in another two-week trial is
 8         putting -- well, it's creating a conflict for me
 9         in representation of all of my clients.
10              I have another client set for trial on June
11         24th who I have not seen in, I'm not sure,
12         probably since February, possibly March.  I'm not
13         sure that's accurate actually.  He has an offer.
14         I haven't even been able to have time to go see
15         him at the jail to convey that offer.
16              I don't want to put off Mr. Jones' trial, he
17         does not want to put off his trial, but me being
18         able to be ready on Monday is going to put me in a
19         difficult situation with all my other clients.
20              Additionally, my biggest concern is making
21         sure we have all our witnesses subpoenaed for
22         trial, and it looks like we will have a day and a
23         half to get that done.  And one of the witnesses,
24         well, is homeless is my understanding, maybe both
25         of them; I'm not entirely sure.  But one for sure
```

```
 1            is bouncing around from place to place because
 2            they left their home.
 3                      THE COURT:  Who is that?
 4                      MS. BREMNER:  Donald Riley; part of the
 5            problem with getting him in here.  I also have a
 6            sentencing on a murder case that's extremely old
 7            on the 21st that I'm not ready for, and a 491 on
 8            Friday that I'm not ready for.
 9                      THE COURT:  How quickly does the State
10            believe you can subpoena your witnesses, including
11            Donald Riley and Sean Hill?
12                      MS. CASTLE:  Judge, we have an address
13            for where Donald Riley was staying earlier, last
14            week.  We have contact with Sean Hill's attorney.
15            So it would be my thought that we could do it
16            relatively quickly.  We were able to locate Donald
17            Riley.  We have phone numbers that we can at least
18            try.  Larry Porter is another State's witness.  We
19            know where he works, and I am confident that we
20            could get that done.
21                 I am not suggesting to the Court that it is
22            going to be necessarily easy, but in fairness to
23            Mr. Jones we were trying to move quickly, and
24            recognizing we released all of our witnesses as
25            well.  So we can provide an update to the Court
```

```
 1          tomorrow, which is Friday, but my goal was to try

 2          to get it done today.

 3                    THE COURT:  All right.  So, Ms. Bremner,

 4          what's your schedule like tomorrow by way of

 5          reporting back here?  Here is my thoughts.

 6                    MS. BREMNER:  Tomorrow is Friday?  I

 7          have a bond reduction in the morning and a 491

 8          hearing in the afternoon in 13.

 9                    THE COURT:  What time is your bond

10          hearing in the morning?

11                    MS. BREMNER:  I want to say ten.  It's

12          in 15.  I'm not ready, so I might have to ask her

13          to move that for me.

14                    THE COURT:  How long do you anticipate?

15                    MS. BREMNER:  If it goes, well, I am not

16          prepared, so there won't be anything.  So no time

17          at all, Judge.

18                    THE COURT:  Can we report here at 10:30

19          then?

20                    MS. BREMNER:  Yeah, that's fine.

21                    MS. CASTLE:  Yes, your Honor.

22                    THE COURT:  All right, tomorrow I want

23          to report here.  Here's my intention:  I want a

24          report from the State as to where you are in

25          finding witnesses.  My intention is to set this
```

```
1           for Monday.

2                    MS. BREMNER:  Judge, can I have one

3           second?

4                    THE COURT:  You may.

5                    (Counsel confer momentarily.)

6                    MS. BREMNER:  We are not committing to

7           Monday for trial.  I mean, I am objecting to

8           setting it for Monday, but I am asking because I

9           was thinking about this, and I need time to

10          consider it.  And in full -- I can't think of the

11          word -- openness to the Court, I need to consider

12          whether or not I am going to writ this decision.

13          And so I am just asking if that because I would

14          need time.  And I am not saying I am this moment

15          because I don't know.  It's just the thought that

16          is in my head.

17                   THE COURT:  I understand.

18                   MS. BREMNER:  But if you want us back

19          here tomorrow at 10:30 I can be here tomorrow at

20          10:30.

21                   THE COURT:  I am trying to be as open

22          and transparent and with all the candor I can give

23          you.  And that's probably the word you're looking

24          for, candor, as I can give you.  My intention is

25          to set it for Monday so we can try it.
```

```
 1            Preparation is not the issue.  The issue is being
 2            able to gather everyone back up to try it.  And it
 3            is not my intention -- I don't know whether or not
 4            anyone believes me, but it is not my intention to
 5            be insensitive to other cases that everyone has to
 6            work on.  That is not my intention.  It is my
 7            intention to get Mr. Jones' case tried, but not my
 8            intention to be insensitive to other cases.
 9                 MS. BREMNER:  And, Judge, can I just
10            say, we're not talking about cases for me.  We're
11            talking about people who have been sitting in jail
12            for months without seeing their attorney.  This
13            isn't a matter of we're all busy; this is not the
14            case at all.  We're talking about people sitting
15            in jail beyond Reginald Jones, Jr. and me having a
16            duty and an obligation under the rule to provide
17            them effective representation.  That's all.
18                 THE COURT:  So noted.  And I appreciate
19            that.  We'll be back here tomorrow at 10:30.
20                 (The record concluded.)
21
22
23
24
25
```

1          **REPORTER'S CERTIFICATE**

2              I, Charla Milne-Cathcart, Certified Court

3          Reporter, certify that I was the acting official

4          court reporter for Division 18 of the Jackson

5          County Circuit Court on June 13, 2019, and I was

6          present and reported all of the proceedings in THE

7          STATE OF MISSOURI, Plaintiff, vs. REGINALD E.

8          JONES, JR., Defendant, Case No. 1716-CR05241-01.

9              I further certify that the foregoing

10          forty-two pages contain a true and accurate

11          reproduction of the proceedings requested to be

12          transcribed.

13                  /s/ Charla M. Milne-Cathcart

14          _____
                   Charla M. Milne-Cathcart  C.C.R. No. 560
15           Acting Official Court Reporter, Division 18
             Jackson County Circuit Court at Kansas City
16

17

18

19

20

21

22

23

24

25

INSTRUCTION NO. 21A

As to Count III, if you do not find the defendant guilty of Murder in the First Degree, you must consider whether he is guilty of Murder in the Second Degree under this instruction.

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about December 7, 2017, in the State of Missouri, the defendant caused the death of Darryl Singleton by shooting him, and

Second, that it was the defendant's purpose to cause serious physical injury to or to cause the death of Darryl Singleton, and

Third, that defendant did not do so under the influence of sudden passion arising from adequate cause, and

Fourth, that defendant did not act in lawful self-defense as submitted in Instruction No. 27, and

Fifth, that defendant did not act in lawful defense of another person as submitted in Instruction No. 28,

then you will find the defendant guilty under Count III of Murder in the Second Degree.

1716-CR05241-01
State v. Reginald Jones Jr.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of Murder in the Second Degree under this instruction.

As used in this instruction, the term "sudden passion" means passion directly caused by and arising out of provocation by Darryl Singleton or another acting with Darryl Singleton which passion arose at the time of the offense and was not solely the result of former provocation.

The term "adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

1716-CR05241-01
State v. Reginald Jones Jr.

1716-CR05241-01
State v. Reginald Jones Jr.

# JURY QUESTION FORM

CASE NAME: *State of Missouri v. Reginald Jones Jr.*

CASE NO. 1716-CR05241-01          DATE: 6/13          TIME: 9:42 am

QUESTION: Can the Jury change the Foreperson?

_____

_____

_____

_____

_____

_____

BY: _____

**FOREPERSON**

COURT'S RESPONSE:

_____

_____

_____

_____

_____

_____          _____

TIME                     Kevin D. Harrell, JUDGE

**Court's Exhibit #**

# JURY QUESTION FORM

CASE NAME: *State of Missouri v. Reginald Jones Jr.*

CASE NO. 1716-CR05241-01      DATE: 6-13-19   TIME: _____

QUESTION:

THERE ARE JURORS THAT DO NOT WANT TO Follow the
Instructions AND Some claim that the Do Not
Understand the Instructions. WE ARE AT A STAND Still
AND cannot Go Forward. THERE IS NO Understanding
of the ORDER of Deciding the Counts. Please
ADVISE.

_____

_____

BY: _____

**FOREPERSON**

COURT'S RESPONSE:

_____

_____

_____

_____

_____

_____

_____     _____

TIME        Kevin D. Harrell, JUDGE

              **Court's Exhibit #**



IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>KEVIN DUANE HARRELL | Case Number: 1716-CR05241-01 |
| | Offense Cycle No.: HU000570 |

| | | | |
|---|---|---|---|
| State of Missouri<br><br>vs. | | | Prosecuting Attorney:<br>SARAH ANNE CASTLE |
| Defendant:<br>REGINALD E. JONES JR. | | | Defense Attorney:<br>PAIGE NOEL BREMNER |
| DOB: ▮▮▮ | SSN: ▮▮▮ | SEX: M | (Date File Stamp) |

## Jury Trial - Mistrial

On June 4, 2019, the State appears by counsel SARAH ANNE CASTLE and Defendant appears in person and by attorney PAIGE NOEL BREMNER.

The case was called for trial. The venire panel was seated. The Court read unnumbered MAI-CR 400.02 to the venire panel and the venire panel was sworn. The parties conducted voir dire. A record was made on strikes for cause, peremptory strikes and other issues relating to jury selection. An opportunity to make Batson challenges was given to the parties and a record made. The jury was selected by the parties, sworn and seated by the Court.

MAI-CR 400.06 was read to the jury.

MAI-CR 402.01 was read to the jury.

The parties presented evidence and closing argument to the jury.

The case was submitted to the jury with instructions from the Court.

The jury retired to deliberate and deliberated for three (3) days. On June 13, 2019, the jury informed the Court that members of the jury were unwilling to follow the Court's instructions and that the jury was deadlocked. Based upon this information from the jury, and Defendant's previous request for a mistrial, the Court declared a mistrial on June 13, 2019, at 10:43 a.m.

**IT IS HEREBY ORDERED** that a mistrial is declared in this matter.

**IT IS FURTHER ORDERED** that a new trial is scheduled for Monday, June 17, 2019, at 9:00 a.m.

SO ORDERED:

June 14, 2019

_____
Date

_____
KEVIN DUANE HARRELL, Judge

**CERTIFICATE OF SERVICE**
I hereby certify that a copy of the
foregoing was duly delivered on

JUNE 14, 2019, to:

SARAH ANNE CASTLE, Assistant Prosecuting Attorney
PAIGE NOEL BREMNER, Attorney for Defendant
State Board of Probation & Parole
Jackson County Dept. of Corrections
Missouri Department of Corrections
Criminal Records

_____
    Zach Smith
    Law Clerk, Division 18

CASE NO. 1716-CR05241-01

STATE OF MISSOURI            ATTY:  SARAH CASTLE
                                            DION SANKAR

V

REGINALD JONES JR.           ATTY: PAIGE BREMNER


## JUDGE'S CRIMINAL TRIAL MINUTES
## DIVISION 18

| Crime Charged: | Class | Felony | Misd |
|---|---|---|---|
| Murder 1st Degree | _____ | _____ | _____ |
| Armed Criminal Action | _____ | _____ | _____ |
| Murder 1st Degree | _____ | _____ | _____ |
| Armed Criminal Action | _____ | _____ | _____ |


Date of Occurrence _____ Place_____ Time_____

Motions in Limine  Filed: _____ Heard: _____

Trial of Case Begins at _____

|  | Done | Date | Time |
|---|---|---|---|
| Evidence of Prior, Persistant, Dangerous or Class Offender Status |  | N/A |  |
| COURT'S REMARKS: Explain Voir Dire and Strikes; Identify Case, Parties and Attorneys |  | 6-4-19 @ 11:05 AM |  |
| Instruction "A" Read to Jury |  | 6-4-19 @ 11:10 AM |  |

| | |
|---|---|
| JURY PANEL SWORN | 6-4-19 @ 11:10 AM |
| Voir Dire by State | 6-4-19 @ 11:15 AM |
| Voir Dire by Defendant | 6-4-19 @ 4:03 PM |
| Challenges for Cause | 6-4-19 @ 8:30 PM |
| Strikes | 6-4-19 @ 9:20 PM |
| Batson Challenges | N/A |
| Parties' stipulate on record that jury conforms to strikes | 6-4-19 @ 9:45 PM |

|  | Done    Date  Time |
|---|---|
| COURT'S REMARKS: no cell phones, contact clerks, Court's daily schedule | 6-5-19 @ 9:16 AM |
| JURY SWORN | 6-5-19 @ 9:17 AM |
| Instructions "b" and 1 and 1 read to jury | 6-5-19 @ 9:17 AM |
| State's opening statement | 6-5-19 @ 9:25 AM |
| Defendant's opening statement (unless reserved) | 6-5-19 @ 9:51 AM |
| State's case begins | 6-5-19 @ 10:15 AM |
| State rests | 6-7-19 @ 1:30 PM |
| Mo. For Judgment of Acquittal at Close of State's Evidence | 6-7-19 @ 1:32 PM |

**X**  Overruled            _____ Sustained

| | |
|---|---|
| Defendant's Opening (if reserved) | N/A |
| Defendant's case begins | 6-7-19 @ 2:00 PM |
| Defendant rests | 6-7-19 @ 4:52 PM |
| Rebuttal evidence | N/A |
| Surrebuttal evidence | N/A |
| Mo. For Judgment of Acquittal at Close of all Evidence | 6-7-19 @ 4:54 PM |

**X** Overruled _____ Sustained

| | |
|---|---|
| Instruction Conference | 6-10-19 @ 12:32 PM |
| Instructions Read to jury | 6-10-19 @ 1:20 PM |
| Arguments by State starts | 6-10-19 @ 2:13 PM |
| Arguments by Defendant starts | 6-10-19 @ 3:00 PM |
| Arguments by State continues | 6-10-19 @ 4:01 PM |
| Jury in recess for deliberation | 6-10-19 @ 4:14 PM |

Done    Date  Time

Hammer instruction given

Verdict of jury –                                                6-13-19 @ 10:43 AM

Mistrial Declared          Reason JURY DEADLOCKED/JURY UNABLE TO FOLLOW
COURT'S INSTRUCTIONS

Poll Jury          Requested_____    Waived \_\_\_\_\_          _____

Verdict Received, Accepted and Entered                                    _____

Discharge and Comments to Jury                                            _____

Motion for New Trial                                                      _____

PSI Ordered            Sentencing Date Set _____

Defendant given additional 10 days to file Motion for New Trial     _____

_____
                  KEVIN D. HARRELL, Judge



# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, ex rel. | ) | |
| REGINALD E. JONES, JR., | ) | |
| Relator, | ) | |
| | ) | WD82877 |
| v. | ) | |
| | ) | |
| THE HONORABLE KEVIN HARRELL, | ) | |
| Judge, 16th Circuit Court, | ) | |
| Respondent. | ) | |

### ORDER

Permission to proceed *In Forma Pauperis* is hereby granted.

Permission to file an Amended Petition is hereby granted.

The Relator's Amended Petition for Writ of Prohibition and Suggestions in

Support, filed on June 14, 2019, are taken up and considered. The Court, being fully

informed, hereby denies petition.

Dated this 14th day of June 2019.

Lisa White Hardwick
Presiding Judge - Writ Division

Thomas H. Newton, J., concurs.

cc:
Hon. Kevin Harrell
Sarah A. Castle
Paige Bremner



# Supreme Court of Missouri
## en banc

SC97955

State ex rel. Reginald E. Jones, Jr., Relator,
   vs.
The Honorable Kevin Harrell, Respondent.

| | |
|---|---|
| ☐ | Sustained |
| ☐ | Overruled |
| ☐ | Denied |
| ☐ | Taken with Case |
| ☐ | Sustained Until |
| ☒ | Other |

Order issued:  Petition for writ of prohibition denied without prejudice.  Relator's motion for emergency stay overruled as moot.

By: _____  _____June 20, 2019_____
     Chief Justice        Date

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2019, I electronically filed the foregoing with the Clerk

of the Court for the United States District Court for the Western District of Missouri by using the

CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that

service will be accomplished by the CM/ECF system.

/s/ Michael K. Hill_____